CAROLINA DISCOUNT CORPORATION v. LANDIS MOTOR COMPANY.

(Filed 30 September, 1925.)

**1. Statutes—Interpretation—Captions—Title.**

The caption or title of a statute cannot by interpretation have the effect of extending the clear and unambiguous meaning thereof as expressed in the body of the act.

**2. Automobiles—Statutes—Interpretation—Transfer of Title—Mortgages.**

Chapter 236, Public Laws of 1923, requiring a certificate of the transfer of title to an automobile to be issued to purchaser by the Secretary of State (now Commissioner of Revenue), making its violation a misdemeanor, is a penal statute and strictly construed, *in pari materia* with our registration laws, C. S., 3311, 3312, relating to the registration of mortgages, and it does not repeal the latter statutes so as not to require the registration of title retaining contract to secure the balance due on the purchase price of an automobile, as against subsequent purchaser for value, and no notice however formal is sufficient to supply that of registration required by the statute.

**3. Same—Courts.**

Where the vendor of an automobile has sold the same without complying with our statute requiring a certificate of the transfer of title, *semble* the court may direct him to deliver this certificate to the vendee so that he may comply with the statute and obtain a new certificate.

APPEAL by plaintiff from VANCE Superior Court. *Devin, J.*

Action by plaintiff to recover a Ford automobile from defendant. Upon agreed facts judgment was rendered for defendant. Affirmed.

The facts agreed are as follows:

"Plaintiff sues to recover of defendant a Ford coupé. It was sold 20 December, 1924, by Louisburg Motor Co. to J. B. Champion, of Franklin County, seller taking a title retained note that was never registered. The Louisburg Motor Company had Champion sign application for title certificate on 16 January, 1925, and the certificate was issued in the name of Champion, saying there is a mortgage to Carolina Discount Corporation for $551.00.

"The title retained note and certificate of title were then transferred to Carolina Discount Corporation. Louisburg Motor Company in December, 1924, took a second mortgage from Champion for $85.00 balance of the price, which was not recorded or mentioned in the certificate of title.

"J. B. Champion on 21 February, 1925, sold the Ford coupé to Landis Motor Company in Henderson for full value, representing that it was his, free of encumbrance, and that he had the certificate of title at his home in Franklin County in his trunk and he took with him an addressed envelope in which to return the transferred certificate to Landis Motor Company."

The following judgment was rendered:

"This action being heard at this term on appeal from the judgment of the recorder of Vance County, and being heard by his Honor on facts agreed on by the parties, the court doth adjudge that plaintiff is not entitled to recover the car sued for, and on motion of defendant the plaintiff is nonsuited. Defendant recovers costs of plaintiff's surety."

The plaintiff appealed and assigned error as follows:

"First Exception: To the failure of the court to hold that the certificate of title issued by the Secretary of State entitled the holder thereof to the automobile in question.

"Second Exception: To the failure of his Honor to hold that the transfer of the certificate of title issued by the Secretary of State was necessary in order to give the transferee of the automobile title to the same.

"Third Exception: To the holding by the court in effect that possession of the car by the holder of the automobile without title from the Secretary of State was valid as against the plaintiff who had a proper title as provided for by law.

"Fourth Exception: To the failure of the court to hold that the registration of the title with the Secretary of State of North Carolina, with encumbrances thereon, was sufficient notice to prospective purchasers of any liens or encumbrances thereon.

"Fifth Exception: To the judgment of nonsuit."

*Willis Smith, J. P. and J. H. Zollicoffer for plaintiff.*
*T. T. Hicks & Son for defendant.*

VARSER, J. Plaintiff contends that, now, and since, the adoption of chapter 236, Public Laws 1923, it is not necessary to register a mortgage covering motor vehicles, for that the provisions of section 2, chapter 236, Public Laws 1923, transfer to the Department of Revenue all the duties in regard to the registration of such chattel mortgages, and that the declaration of the owner, set out in the application for registration with the Commissioner of Revenue, showing the liens or encumbrances, is all that is necessary. This, if true, would make a radical change in the registration of chattel mortgages and take from all the counties, and transfer to the Department of Revenue, the many transactions represented in chattel mortgages covering motor vehicles.

The caption of chapter 236, Public Laws 1923, is broad and inclusive; it evinces the purpose to protect the title of motor vehicles; to provide for the issuance of certificates of title and evidence of registration thereof; to regulate purchase and sale or other transfer of ownership; to facilitate the recovery of motor vehicles stolen or unlawfully

taken; to provide for the regulation and licensing of certain dealers in used and second-hand vehicles, and to prescribe the powers and duties of the Secretary of State (now Commissioner of Revenue) under this act and to provide penalties for violation of its provision.

When the act, itself, is examined, it does not go as far as its caption would indicate a purpose to go. Section 2 provides that no certificate of registration or number plates for such vehicles shall be issued unless the applicant shall, at the time, make application for an official certificate of title, or shall present such satisfactory evidence that such certificate has been previously issued and allowing the registration officer to prescribe and furnish a form, and the applicant shall set out a full description of the motor vehicle on this official application form, containing the manufacturer's number, the motor number and any distinguishing marks, together with the statement of the applicant's title, and "of any liens or encumbrances upon said motor vehicle," and such other information as may be required. If the registration officer is satisfied that the applicant is the owner of such motor vehicle, or otherwise entitled to have the same registered in his name, he shall, thereupon, issue to the applicant an appropriate certificate of title over his signature, authenticated by his seal bearing a consecutive number, and the certificate shall contain such description and evidence of identification of the motor vehicle that such officer may deem proper, together with the statement of any liens or encumbrances, which the application may show to be thereon. Another provision is: "Said certificate shall be good for the life of the car as long as the same is owned or held by the original holder of such certificate, and need not be renewed annually, or at any other time, except as herein provided."

The caption, or title, may be resorted to when the terms of the act are not clear, but it cannot be used to extend the terms of the act beyond their clear meaning. *Freight Discrimination Cases,* 95 N. C., 434, 447. The language of the caption does not control the act. *S. v. Woolard,* 119 N. C., 779; *S. v. Bell,* 184 N. C., 701; *Weesner v. Davidson,* 182 N. C., 604; *In re Chisholm's Will,* 176 N. C., 211.

Section 3 requires that, "in the event of the sale or other transfer . . . of the ownership of the motor vehicle for which a certificate of title has been issued, as aforesaid, the holder of such certificate shall endorse on the back of same an assignment thereof, with warranty of title in form printed thereon, with a statement of all liens or encumbrances on said motor vehicle, and deliver the same to the purchaser or transferee at the time of delivery to him of such motor vehicle." The purchaser or transferee is then required, within a named time, to forward the transferred certificate to the Secretary of State, to the end that a new certificate shall be issued.

Section 4 prohibits the operation of motor vehicles unless application has been made for certificate of title, and makes its violation a misdemeanor, and declares that any person who sells a motor vehicle without complying with requirements of section 3, in regard to the application for a new certificate in case of sale or transfer, is guilty of misdemeanor. This action, however, concerns a mortgagee, and a purchaser for value, from a "person who sells."

A careful perusal of this act fails to disclose any provision prohibiting a sale or transfer of the title of a motor vehicle without a transfer and delivery of a certificate of registration of title, and there is no provision that a sale so made is either fraudulent or void. Its provisions operate upon the parties who make a sale or a purchase without complying with its terms. Its penal provisions are clear. They are directed against those who violate after the sale, or transfer, has been made.

This statute is a police regulation to protect the general public from fraud, imposition and theft of motor vehicles. The registration statute, C. S., 3311, 3312, specifically protects mortgagees.

Inasmuch as this act contains provisions of a highly penal nature, and, although it is within the police power, the courts will not, by construction, extend its penal provisions unless the case comes within the letter of the law, and within its meaning and palpable design. *Finance Co. v. Hendry,* 189 N. C., 549, 553.

A sale of personal property is not required to be evidenced by any written instrument in order to be valid. This rule had been of such long standing prior to the enactment of the Motor Vehicle Registration Act, we cannot assume that the Legislature intended to change this rule, unless it says so. Statutes relating to the same subject-matter, and not in conflict, are to be construed *in pari materia,* so as to effectuate all and not work a repeal by implication, unless they are so repugnant and *contrariant* that such a construction cannot be had. The law does not favor a repeal by implication. There must be an intention to repeal the former act or such a repugnance that both cannot stand. *Jones v. Ins. Co.,* 88 N. C., 499; *S. v. Sutton,* 100 N. C., 474, 476; *S. v. Monger,* 111 N. C., 675, 679.

Therefore, we hold that the provisions of C. S., 3311, 3312 are not affected or repealed by chapter 236, Public Laws 1923, as amended, and that all chattel mortgages and conditional-sale contracts on motor vehicles must be registered in the county in which the mortgagor resides, and in case the mortgagor resides out of the State, then in the county where the said motor vehicle is situated, in order to obtain immunity against the creditors and purchasers for value, from the mortgagor. The conditional-sale contract, purchased by the plaintiff, never having been registered, is invalid as against the defendant, a purchaser for full value.

It is well settled that "no notice, however full and formal, will supply the place of registration." *Piano Co. v. Spruill,* 150 N. C., 168, and the wealth of authorities therein cited.

In *Piano Co. v. Spruill, supra,* McConnico gave Spruill a chattel mortgage on a piano, and the mortgagee registered this chattel mortgage. A conditional-sale agreement for the balance due on the purchase price was not registered, and the chattel mortgage recited that the piano was free and clear of all encumbrance, except $115 now due the piano company. This was held not to affect the right of the mortgagee in the chattel mortgage. The case at bar can have no stronger equity for plaintiff than this. The registration laws are provided for the protection of the grantees, and when not used, creditors and purchasers for value who have been diligent to comply with the law, are entitled to its protection.

It does not appear that the plaintiff has had possession, at any time, of the automobile in controversy, so as to come within the provisions of *Cowan v. Dale,* 189 N. C., 684. It appears that the defendant purchased from Champion the motor vehicle in controversy, and paid full value and took steps to have the certificate of title forwarded to it by Champion, but Champion did not so forward it to the defendant. The plaintiff already held the certificate of title, but Champion did not disclose this fact to defendant. It was not necessary for the plaintiff to have this certificate of title in order to protect its debt. Its duty was, if it desired protection, to have it registered in the county of Champion's residence. Not having obeyed C. S., 3311, 3312, the plaintiff is not entitled to assert its mortgage against the defendant. Upon the facts agreed, the defendant is the owner of the motor vehicle in controversy. We see no reason why, upon proper application to the court, on the facts stated in this record, it would not be proper to direct the plaintiff to deliver its certificate of title to the defendant to the end that the defendant may comply with the law and obtain a new certificate.

Plaintiff cites *Miller v. Ins. Co.,* 230 Pac., 1030, from Kansas; *Curry v. Iowa Truck & Tractor Co.,* 187 N. W., 36, from Iowa; *Crandall v. Shay,* 214 Pac., 450, from California. These cases hold with much clarity of reasoning and support in numerous precedents, that the sale and transfer of title are void when the statute prohibits such unless in compliance with its requirements. *Miller v. Ins. Co., supra,* deals with the Missouri statute which says: "Any sale or transfer of such motor vehicle without complying with the provisions of this section shall be fraudulent and void." The provisions referred to are similar to the requirements in the North Carolina statute in detail.

11—190

In *Curry v. Iowa Truck & Tractor Co., supra,* the Iowa statute provides: "Until said transferee has received said certificate of registration, and has written his name upon the face thereof, delivery and title to said motor vehicle shall be deemed not to have been made and passed."

In *Crandall v. Shay, supra,* the quoted section of the statute is the same as in the *Curry case, supra,* with this in addition: "And said intended transfer shall be deemed to be incomplete and not to be valid or effective for any purpose."

The pivotal provision of the statutes in these cases are absent from our statute. The North Carolina statute contents itself with penal provisions, operative on the persons who violate them, including the prohibition of the use of the vehicle on the highways, and no more. Our Legislature could have provided, as did Iowa, Missouri and California, but it is clear that it did not, and we cannot extend the act beyond its provisions, however laudable the purpose, or beneficent the desired result.

When the act of sale, or transfer is forbidden by statute, the violation of a positive law cannot be a consideration of a valid contract (*S. v. Cox,* 268 S. W., 87, 37 A. L. R., 87), and the converse is equally true that, when the act of sale, or transfer, is not forbidden, then the contract may be valid.

Therefore, the judgment appealed from must be

Affirmed.