THE HOME INDEMNITY COMPANY v. WEST TRADE MOTORS, INC., E. M. CROCKETT, AND LOUIS CROSBY BRADSHAW.

(Filed 1 February 1963.)

**1. Appeal and Error § 59—**

A decision of the Supreme Court must be read in the light of the facts of the case in which it is written, and general statements therein appearing may not be applicable to a different factual situation.

**2. Automobiles § 4—**

Where the owner of a registered vehicle transfers ownership to a nondealer, it is the duty of the vendor to endorse the certificate of title to the transferee with a statement of all liens and encumbrances verified by oath, and these papers must be transmitted to the Department of Motor Vehicles; but when an owner sells to a dealer, the dealer is not required to transmit the certificate of title to the Department of Motor Vehicles until the dealer resells. G.S. 20-75 as amended.

**3. Same; Insurance § 57— Garage liability policy held not to cover negligence of purchaser to whom dealer had endorsed certificate,**

**even though purchaser's mortgagee fails to send papers to Department of Motor Vehicles.**

Where a dealer purchases a car from an individual and thereafter sells it to another individual and, upon payment of the full purchase price, endorses his certificate of title to the purchaser and, at the direction of the purchaser delivers the certificate of title to a finance company loaning a part of the purchase price secured by chattel mortgage, *held* the dealer has done all required of him by law and may not be penalized for the failure of the mortgagee to transmit the endorsed certificate, with notation of liens, to the Department of Motor Vehicles, and the insurer in a garage liability policy issued to the dealer may not be held liable for damages thereafter resulting from the negligent operation of the vehicle by the purchaser.

APPEAL by plaintiff from *McConnell, S.J.,* August 20, 1962 Term of UNION.

Plaintiff seeks by declaratory judgment a determination of its liability, if any, arising under a standard garage liability policy issued by it to West Trade Motors, Inc., hereafter designated as dealer. Individual defendants are hereafter designated by their surnames.

The facts as stated in the complaint which give rise to the question are: Dealer is a registered dealer in used automobiles. On 24 July 1961 it purchased from Albert Selby a described 1955 Mercury coupe. It took immediate possession, receiving from Selby a verified assignment and warranty of title by completion of the form appearing on the reverse side of the Selby certificate of title issued to him by the Department of Motor Vehicles.

On 16 September 1961 dealer sold the Mercury coupe to Bradshaw. Dealer "executed and acknowledged an Assignment and Warranty of Title as a registered dealer of automobiles in the form approved by the Department of Motor Vehicles of the State of North Carolina and printed upon the reverse side of the certificate of title to said Mercury automobile, and duly delivered possession of said vehicle to the defendant Louis Crosby Bradshaw after having received payment in full. . ."

Bradshaw "executed on the form approved and provided by the Department of Motor Vehicles of the State of North Carolina for such purpose, a Purchaser's Application for New Certificate of Title to said automobile, duly sworn to by him and notarized, and took possession of said automobile."

On 16 September 1961 Bradshaw borrowed from Smart Finance Company monies necessary to make the purchase. He gave the finance company "a written security instrument" to secure payment of the loan. Dealer, by agreement with Bradshaw, "delivered said certificate

of title for the Mercury automobile, together with the Purchaser's Application for New Certificate of Title, to said Smart Finance Company, through whom the defendant Louis Crosby Bradshaw had procured a loan for the balance of the purchase money on said 1955 Mercury automobile, as aforesaid, as security for said loan, and that said Smart Finance Company had possession of all the aforesaid documents at all times referred to hereinafter."

On 4 November 1961 Bradshaw, operating the Mercury coupe, was in a collision with a motor vehicle owned and operated by Crockett. Crockett asserted the collision was due to the negligence of Bradshaw; Bradshaw had not acquired title to the Mercury because title was still vested in dealer; Crockett was protected and entitled to recover from plaintiff compensation for his injuries under the garage liability policy issued by plaintiff to dealer.

The policy issued by plaintiff to dealer covers bodily injury and property damage resulting from "the ownership, maintenance or use of any automobile in connection with the above defined operations, and the occasional use for other business purposes and the use for non-business purposes of (1) any automobile owned by or in charge of the named insured and used principally in the above defined operations, and (2) any automobile owned by the named insured in connection with the above defined operations for the use of the named insured, a partner therein, and executive officer thereof, or a member of the household of any such person." The policy defines the insured as "the named insured. . .and (2) any person while using an automobile covered by this policy, and any person or organization legally responsible for the use thereof, provided the actual use of the automobile is by the named insured or with his permission."

Crockett demurred to the complaint, asserting that it stated no cause of action because Bradshaw acquired no title until he applied to the Department of Motor Vehicles for a title, citing in support of his position G.S. 20-75 and 20-72(b) as amended by the Legislature in 1961. The court was of the opinion that these statutes prevented title vesting in Bradshaw, and because he had no title "the defendant, Bradshaw, would be deemed in law to have operated said automobile at the time of the collision with the permission and consent of West Trade Motors, Inc. within the meaning of said policy of insurance and as an insured of the plaintiff under said policy. . ." For this reason it sustained the demurrer. Plaintiff excepted and appealed.

*Carpenter, Webb & Golding by William B. Webb for plaintiff appellant.*

*Wilson & Clark by Richard S. Clark for defendant appellee Crockett.*

RODMAN, J. Before Crockett could recover, he would have to establish dealer's liability. This liability exists, Crockett asserted and the court approved, because dealer was the owner of the Mercury coupe used by Bradshaw with dealer's permission on 4 November 1961. The contention is based on the interpretation Crockett places on our decision in *Credit Co. v. Norwood,* 257 N.C. 87, 125 S.E. 2d 369.

We repeat what Justice Jackson so well said in *Armour & Co. v. Wantock,* 323 U.S. 126, 89 L. ed. 118: "It is timely again to remind counsel that words of our opinions are to be read in the light of the facts of the case under discussion. To keep opinions within reasonable bounds precludes writing into them every limitation or variation which might be suggested by the circumstances of cases not before the Court. General expressions transposed to other facts are often misleading." This clearly-stated rule has been applied by this Court on many occasions. *Howard v. Boyce,* 254 N.C. 255, 118 S.E. 2d 897, *Lane v. Dorney,* 250 N.C. 15, 108 S.E. 2d 55, *In re Will of Pridgen,* 249 N.C. 509, 107 S.E. 2d 160, are illustrative.

*Credit Co. v. Norwood, supra,* called for a determination of the priority between two creditors of Norwood. It did not determine any rights as between vendor and vendee of a motor vehicle. That question was not presented. If the sales and collision referred to in the complaint had occurred prior to 1961, Crockett would, probably, not have asserted any claim against dealer or plaintiff, its insurance carrier. If he had made such assertion, he would have found a clear-cut and positive denial of liability in *Godwin v. Casualty Co.,* 256 N.C. 730, 125 S.E. 2d 23. Unless the 1961 amendments to our motor vehicle laws require a different result, the law declared in *Godwin v. Casualty Co., supra,* is still an effective barrier to Crockett's claim.

C. 835, S.L. 1961, is entitled "AN ACT TO STRENGTHEN THE MOTOR VEHICLE CERTIFICATE OF TITLE LAWS BY PROVIDING FOR A MANUFACTURER'S CERTIFICATE OF TRANSFER FOR NEW MOTOR VEHICLES AND FOR THE RECORDATION AND PERFECTION OF SECURITY INTERESTS IN VEHICLES." Unlike most of our statutes this bill contains a preamble stating the reasons which called for a modification of the law. The bill said: "WHEREAS, the present motor vehicle certificate of title law provides for a declaration of all existing liens at the time of application for registration, but does not require that liens given thereafter be declared and entered on the certificate of title; and

"WHEREAS, the certificate of title, often regarded as absolute, is not conclusive as to liens and may not be relied upon to show good title for purpose of sale or encumbrance, except as it relates to lien perfection under Section 213 of the Interstate Commerce Act; that is, liens on equipment of interstate common and contract carriers; and

"WHEREAS, the present certificate of title law does not meet the requisites of the Uniform Title Code because the certificate of title is not in and of itself adequate notice to third parties of existing liens; and

"WHEREAS, a certificate of title that can be relied upon as a ready means by which all legal interest in motor vehicles may be determined would be to the public interest: Now, therefore. . ." Then followed the enacting clause.

For the purpose of this decision sales of motor vehicles may be put in two classes: (a) sale by a registered owner to someone other than a dealer, G.S. 20-72, and (b) sale by a registered owner to a dealer and the subsequent sale by the registered dealer to a nondealer, G.S. 20-75.

G.S. 20-72(b) was rewritten by the 1961 Legislature. The concluding sentence of that subsection now reads: "Transfer of ownership in a vehicle by an owner is not effective until the provisions of this subsection have been complied with." That subsection makes it the duty of the vendor of a registered vehicle to endorse his certificate of title to the transferee with a statement of all liens or encumbrances to be verified by the oath of the owner. These papers must be transmitted to the Department of Motor Vehicles. But when a sale is made to a dealer, it is not necessary to transmit the certificate of title to the Department of Motor Vehicles until the dealer resells. G.S. 20-75. To G.S. 20-75 the Legislature in 1961 added: "Transfer of ownership in a vehicle by a dealer is not effective until the provisions of this subsection have been complied with." The burden is imposed on the vendee, or as the statute describes him, transferee, to present the certificates and make application for a new certificate of title within twenty days. A wilful failure to do so is expressly declared to be a misdemeanor, G.S. 20-73, and when the certificate of title is delivered to a lien holder, it is nonetheless the duty of the purchaser to see that the certificate is forwarded to the Department of Motor Vehicles. G.S. 20-74.

We said in *Credit Co. v. Norwood, supra*: "Since 1 July 1961 the purchaser of an automobile does not acquire title until he has complied with the provisions of G.S. 20-72(b) and 75. These sections make it the duty of the purchaser to secure from his vendor the old certifi-

cate duly endorsed or assigned and to apply for a new certificate. They do not relate to the duty of the Department to issue a new certificate. What the amendments of 1961 say is: The vesting of title is deferred until the purchaser has the old certificate endorsed to him and makes application for a new certificate.

. "If, as appellee argues, the Legislature intended the quoted amendment to mean purchaser acquired no title until the Dpartment issued him a certificate, it would doubtless have said: 'Title shall not pass to purchaser until the Department has issued him a new certificate' or some other plain and positive language to that effect. *The intent declared in the preamble, to prevent vendor from using the old certificate to entrap the unwary was effectively accomplished by the language selected by the Legislature.*" (Emphasis added.)

The facts here admitted by the demurrer not only fail to suggest any attempt on the part of dealer to entrap Crockett or any other person injured by the negligence of its vendee but affirmatively show dealer had, as required by the statute, given the duly indorsed certificate of title and Bradshaw's application for a new certificate to his agent, Smart Finance Company. Dealer had put it beyond its power to use the certificate for any purpose.

There is nothing in the statute which suggests dealer, a vendor, should be penalized and held liable because of the failure of Bradshaw, a purchaser, to perform his statutory duty.

Prior to 1961 a creditor claiming a lien on a motor vehicle was required to register his lien in the office of the register of deeds to protect himself against claims of other creditors of the owner. Now he protects himself by having his claim noted on the certificate of title issued by the Department of Motor Vehicles.

One who claims an interest in a motor vehicle and *defers* or delays giving notice of his right by applying to the Department of Motor Vehicles for a new certificate or the notation of his claim on the outstanding certificate must suffer the consequences of his delay. As to him *the transfer of ownership is not effective* until he has requested the Department to act.

Nothing here said is intended to indicate nonliability of a registered dealer's insurance carrier where the dealer permits purchaser to use dealer's registration plates within the twenty-day period allowed purchaser to obtain insurance and have the vehicle registered in his own name. G.S. 20-79.1.

Reversed.