MINNIE BROWN LUTHER v. NATIONWIDE MUTUAL INSURANCE COMPANY.

AND

JOE EMMITT LUTHER v. NATIONWIDE MUTUAL INSURANCE COMPANY.

(Filed 4 November, 1964.)

1. **Insurance § 57 —**

Where a dealer accepts a purchaser's old car as down payment on another car and the purchaser signs the title certificate on the car turned in and agrees on the payments to be made and signs a contract for the car purchased, the dealer's garage liability policy does not cover damages inflicted in a collision occurring some month thereafter while the car purchased was being driven by the purchaser, even though the car purchased is damaged in the collision to such extent that the purchaser refuses to accept repairs but permits the dealer to collect the collision insurance and sell the car to another after repair.

2. **Insurance § 60—**

Ordinarily, failure to give notice to insurer of an accident within the time stipulated in the policy precludes recovery.

APPEAL by plaintiffs from *Parker, J.,* May Civil Session 1964 of NASH.

This is an action to recover from defendant the amount of an unsatisfied judgment entered against one George Elton Lamm on 19 October 1960 in the Superior Court of Nash County, North Carolina, as the result of an automobile accident on 20 October 1957 between a 1956 Ford automobile driven by Lamm and an automobile in which the plaintiffs, Minnie Brown Luther and Joe Emmitt Luther, were riding.

The plaintiffs allege that the 1956 Ford automobile driven by Lamm at the time of the collision complained of, was owned by the Lee Motor Company and was being driven by Lamm with its permission. It is further alleged by the plaintiffs in their respective complaints that some time prior to 20 October 1957, the defendant insurance company issued a Garage Liability Policy to the Lee Motor Company, Inc., Elm City,

North Carolina, as named insured, wherein defendant insurance company's policy contained the following provisions:

"* * * To pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as damages because of bodily injury * * * arising out of * * *

"The ownership, maintenance or use of the premises for the purpose of an automobile sales agency * * * and all operations necessary or incidental thereto; and the ownership, maintenance or use of any automobile in connection with the above defined operations * * *.

"With respect to the insurance under Coverages A, B and D the unqualified word 'Insured' includes the Named Insured and also includes * * * any person while using an automobile covered by this policy, and any person or organization legally responsible for the use thereof, provided the actual use of the automobile is by the Named Insured or with his permission. * * *

"When an accident occurs written notice shall be given by or on behalf of the Insured to the Company or any of its authorized representatives as soon as practicable. * * *

"If claim is made or suit is brought against the Insured, the Insured shall immediately forward to the Company every demand, notice, summons or other process received by him or his representatives."

The defendant admitted the issuance of the insurance policy as alleged, and further admitted it was in effect on 20 October 1957. Defendant denied that on 20 October 1957 the Lee Motor Company, Inc., was the owner of the 1956 Ford automobile driven by Lamm, or that it was being used in connection with its sales agency, and expressly denied that Lamm was operating said automobile at the time complained of with the consent and permission of Lee Motor Company, Inc.

The defendant likewise pleaded the failure to give notice of the accident, as required by the policy. One of the attorneys for plaintiffs orally notified the defendant's agent in Wilson, North Carolina, of the alleged claim on 4 January 1960, and the first written notice to the company was given by plaintiffs' attorneys by letter dated 16 August 1960.

These cases were consolidated for trial by consent of the parties.

The plaintiffs' evidence tends to show that on Sunday, 29 September 1957, Lamm saw Ricks, a salesman for Lee Motor Company, at a service station near Elm City. Ricks was driving a 1956 Ford and asked Lamm if he was interested in trading again, that Lamm had paid enough on his 1955 Ford to make a down payment on the 1956 Ford

Ricks was driving. The following morning, Ricks left the 1956 Ford with Lamm to drive, taking Lamm's 1955 Ford back to Lee Motor Company. That same day, 30 September 1957, after driving the 1956 Ford "a little bit," Lamm went to the Lee Motor Company and talked to Mr. James Lee about a trade. An agreement was reached whereby Lamm's 1955 Ford was to be taken in as a down payment on the 1956 Ford, with monthly payments to start thirty days thereafter. Lamm did not sign a title certificate for the 1956 Ford, nor did he remember signing a conditional sales contract. He testified: "On the day that I made my trade with Lee Motor Company I left the '55 Ford that I had owned at Lee Motor Co. After the day I traded, on or about September 30, 1957, I have never made any demand on Lee Motor Co. to return to me the 1955 Ford. I left the '55 Ford there at Lee Motor Co. on that day and signed the title certificate for it. I drove the '56 Ford away from there on the same day. When I left there I parked that car at my home, drove it to work and to other places. I did not ask any officer of Lee Motor Company where I could drive it and did not make any report to Lee Motor Company as to where I was driving it."

This witness also testified that he considered the 1956 Ford his own property. He further testified: "I don't remember when my first payment was due on the 1956 car that I bought; I would say in a month or forty-five days. I agreed with them on the payments and when they were to be made. I signed a paper. I knew the amount I was being allowed for my car and the amount that I would have to pay on the new car and knew the amount of the payments at that time and when they were to be made. I also knew that I would get the title free and clear when I made all my payments. That was the understanding and agreement I had with Mr. Lee."

The 1956 Ford was damaged in the collision on 20 October 1957 to the extent of approximately $1,200. On the next day after the collision, the car was towed to Perry Auto Parts in Wilson, North Carolina. Later, Lee's wrecker got the car and took it to Lee Motor Company in Elm City. The car was damaged to such an extent that Mr. Lamm declined to authorize repairs or agree to accept it if it were repaired. The Lee Motor Company collected collision insurance on the car, repaired it and sold it. Neither the cost of the repairs nor the sale price of the car is disclosed by the record.

At the close of plaintiffs' evidence, the defendant moved for judgment as of nonsuit. The motion was allowed as to each plaintiff's cause of action. The plaintiffs appeal, assigning error.

*Spruill, Trotter, ·Biggs & Lane; William L. Thorp, Jr., for plaintiff appellants.*

*Lucas, Rand, Rose & Morris for defendant appellee.*

DENNY, C.J.  This Court said in the case of *Credit Co. v. Norwood*, 257 N.C. 87, 125 S.E. 2d 369: "Prior to 1961 a purchaser of a motor vehicle acquired title notwithstanding the failure of his vendor to deliver vendor's certificate of title or vendee's failure to apply for a new certificate. In *Peek v. Trust Co.*, 242 N.C. 1, 86 S.E. 2d 745, the court charged: 'Now, the law does not prohibit the sale of a motor vehicle without a transfer and delivery of certificate of registration of title; in other words, one can sell a motor vehicle on one day and the title pass, and deliver or transfer the paper certificate of title on a later date.' This Court, in approving that instruction, said: '(I)t is observed that the instruction as given is precisely in accord with the decision in *Corporation v. Motor Co.*, 190 N.C. 157, 129 S.E. 414.' Similar interpretation was given the statute in *Finance Co. v. Pittman*, 253 N.C. 550, 117 S.E. 2d 423; 32 N.C. Law Review 545."

In *Godwin v. Casualty Co.*, 256 N.C. 730, 125 S.E. 2d 23, the purchaser had made the required initial cash payment and executed a conditional sales contract in blank, the precise number and amount of installments covering the balance of the purchase price had not been determined. The court below, however, held all the essential elements of the contract of sale by Ben Brewer, trading as Brewer Motor Company, to Paul J. Hinson, had been completed. Hinson took possession of the car involved on 18 December 1958, and on 19 December 1958 signed an application for a certificate of title. Hinson had exclusive possession of the car until the collision on 24 December 1958. Plaintiff Godwin, who was injured in the collision, obtained judgment against Hinson who failed to satisfy same. Godwin brought an action against Brewer's insurer who had issued to him a Garage Liability Policy similar to that involved in the instant case. Judgment of nonsuit was entered below and, upon appeal, we affirmed.

In our opinion, the plaintiffs' evidence herein is insufficient to support a finding that the Lee Motor Company, Inc., was the owner of the 1956 Ford on 20 October 1957. Moreover, it is admitted that no notice, oral or otherwise, was given to the defendant or its agent with respect to the collision complained of until after the expiration of more than twenty-six months. See *Muncie v. Insurance Co.*, 253 N.C. 74, 116 S.E. 2d 474.

The judgment of the court below is

Affirmed.