THE NATIONAL BANK OF SANFORD v. GREENSBORO MOTOR COMPANY, T/A GREENSBORO FORD.

(Filed 2 June, 1965.)

**1. Automobiles § 4—**

Under the 1961 amendment to G.S. 20-72(b) no title to a motor vehicle passes to the purchaser until the certificate of title has been assigned, delivered to the purchaser and application made for a new certificate.

**2. Same;  Chattel Mortgages and Conditional Sales § 12—**

Where the purchaser of a motor vehicle executes a chattel mortgage which is registered prior to the acknowledgment of the assignment of the certificate of title by the seller and the forwarding of an application for a new certificate to the Department of Motor Vehicles, the chattel mortgage does not create a lien on the vehicle, since the purchaser, at the time it was executed, did not have title, and the instrument can operate only as a contract to execute a chattel mortgage upon the acquisition of title.

APPEAL by plaintiff from *May, S.J.,* October 12, 1964 Civil Session of LEE.

Plaintiff instituted this action to recover $3,300, the amount due it by Carolina Concrete & Paving, Inc. (Carolina), secured by chattel mortgage on two 1957 G.M.C. trucks, which plaintiff alleges were converted by defendant.

The parties waived jury trial. Summarized, the facts found, supported by stipulations, parol and documentary evidence, are these: On March 5, 1957, the Commissioner of Motor Vehicles issued to Fields Ready Mixed Concrete Company (Fields) certificates of title for two motor vehicles. Each certificate referred to a G.M.C. truck, identified by motor and serial number. Each certificate stated the vehicle was subject to a lien in favor of Yellow Manufacturing Acceptance Corporation in the sum of $19,427.28. Yellow Manufacturing Acceptance Corporation marked the certificates "PAID IN FULL AND CANCELLED" on August 31, 1959. Each shows an assignment of title by Fields, the registered owner, to Carolina. The assignments were acknowledged before a notary public on March 15, 1962. They recite a sale made December 4, 1961.

On the back of the certificate is a form entitled: "PURCHASER'S APPLICATION FOR NEW CERTIFICATE OF TITLE." On March 15, 1962, Carolina filled out and executed this form for each of the vehicles. The certificate and application by Carolina for a new certificate for one of these trucks was forwarded to, and received by, the Department of Motor Vehicles in May 1962; the other was forwarded and received on November 1, 1962. Neither of the applications for a new certificate disclosed the fact that Carolina had mortgaged the vehicle therein described to plaintiff; nor did it indicate the existence of any other liens.

Carolina, on October 30, 1962, sold the trucks to defendant, a registered dealer. It paid a valuable consideration therefor. On November 1, 1962, it applied to the Department of Motor Vehicles for new certificates. It sold the trucks to Carolina Ready Mix, Inc. (Mix) on January 24, 1963. Mix, on the same day, applied to the Department for new certificates. They were issued.

On December 14, 1961, Carolina borrowed $8,500 from plaintiff. As evidence of its debt, it gave plaintiff a negotiable note payable in monthly installments. It secured payment of this note by chattel mortgage on the two G.M.C. trucks which Carolina had, on December 4, 1961, contracted to purchase from Fields. This chattel mortgage was, on December 18, 1961, recorded in the office of the Register of Deeds of Lee County, where Carolina had its office. The balance owing plaintiff by Carolina on the note secured by the chattel mortgage is $3,300 plus interest.

Based on its findings, the court concluded defendant acquired title to the trucks, free of any claim which plaintiff could assert. Judgment that plaintiff take nothing was entered.

*Teague, Williams & Love for plaintiff appellant.*
*Smith, Moore, Smith, Schell & Hunter; Herbert O. Davis for defendant appellee.*

RODMAN, J. Prior to 1961, the title to motor vehicles and liens thereon could be transferred, created and protected in the same manner that title to and liens on other chattels could be transferred and created. The certificates of title issued by the Department of Motor Vehicles were mere means of protecting "the general public from fraud, imposition and theft." That was the holding of this Court in *Corporation v. Motor Co.,* 190 N.C. 157, 129 S.E. 414, decided in September 1925.

Notwithstanding the conclusion reached in 1925, litigants continued their efforts to secure a judicial declaration that certificates of title for motor vehicles issued under then existing statutes were analagous to

statutory certificates of title for real estate, registered as to title, pursuant to the provisions of c. 43 of the General Statutes. Our last answer to these contentions was given in December 1960, when *Finance Co. v. Pittman*, 253 N.C. 550, 117 S.E. 2d 423, was decided. We then said: "The interpretation given in 1925 has not been rejected by the Legislature. If public policy now requires a different system of establishing ownership and encumbrances on motor vehicles, such policy must be declared by the Legislature. It can enact laws to accomplish that purpose. We have neither the power nor the desire to usurp its prerogative."

The 1961 Legislature convened February 8, 1961. It enacted c. 835, S.L. 1961. It would be difficult to read that Act and the decision in *Finance Co. v. Pittman, supra,* without reaching the conclusion that the Legislature did intend to make the very changes which we said were beyond our power to make, but within the power of the Legislature.

By express language, §12 of the Act eliminated the necessity of recording mortgages on motor vehicles in the county in which the mortgagor resided. Creditors and purchasers, after January 1, 1962, did not have to go to the office of the Register of Deeds to ascertain if the vehicle was mortgaged; a purchaser or mortgagee need only look at the certificate of title. That paper would provide him with all necessary information as to ownership and liens created subsequent to January 1, 1962. The other portions of the Act took effect July 1, 1961.

G.S. 20-72(b), prior to the ratification of the 1961 Act (c. 835, S.L. 1961), required the owner to endorse his certificate with a warranty of title and a statement of liens to a purchaser or mortgagee, which transfer and assignment the mortgagee was required to transmit to the Department of Motor Vehicles within twenty days. Failure of the owner to comply with the statute was made a misdemeanor, but such failure did not invalidate a mortgage or other transfer made by the owner. *Corporation v. Motor Co., supra.*

Sec. 8 of the 1961 Act amended the statute, G.S. 20-72(b), expressly providing: "Transfer of ownership in a vehicle by an owner is not effective until the provisions of this subsection have been complied with." After July 1, 1961, the effective date of the amendment, no title passed to a purchaser until the certificate had been assigned, delivered to the purchaser and application made for a new certificate. *Credit Co. v. Norwood*, 257 N.C. 87, 125 S.E. 2d 369.

The statement in Fields' assignment to Carolina that the date of sale was "12/4/61" had no effect on the legal title. It was a mere statement of the date on which the parties contracted to buy and sell.

Since Carolina was not, on December 14, 1961, the owner of the trucks, it could not then create a lien thereon. The paper it gave plaintiff was nothing more than a contract to mortgage, if and when it ac-

quired title. *Chandler v. Cameron,* 229 N.C. 62, 47 S.E. 2d 528, 3 A.L.R. 2d 571.

The parties stipulated defendant, before purchasing, examined the certificates issued Carolina. These certificates, showing Carolina acquired title subsequent to January 1, 1962, did not disclose plaintiff's claim of lien. Since Carolina could not create a lien before it acquired title, defendant was protected against any act of Carolina ante-dating the dates of the certificates. Registration of plaintiff's claim on December 18, 1961 was not notice to defendant. *Chandler v. Cameron, supra; Bank v. Johnson,* 205 N.C. 180, 170 S.E. 658; *Door Co. v. Joyner,* 182 N.C. 518, 109 S.E. 259, 25 A.L.R. 81; *Richardson v. Atlantic Coast Lumber Co.,* 75 S.E. 371, L.R.A. 1918C 788; Anno: Instrument Executed before Title Acquired, 18 Ann. Cas. 15; 45 Am. Jur. 477-8.

Plaintiff now contends defendant has not acquired title to the trucks because the assignment of the certificates issued Carolina fail to disclose either the office or the authority of Chalmers H. Thomas, who executed the assignments in Carolina's name, to act for it. The contention, seemingly an afterthought, is without merit.

The parties stipulated defendant, on November 1, 1962, purchased both of these trucks, paying a valuable consideration therefor; and further stipulated that the Department of Motor Vehicles had acted on the assignments and issued new certificates to defendant. The stipulations manifest an intent to submit the controversy to the Court on the theory that defendant purchased and acquired title, and that the only question for decision was whether the title acquired was or was not subject to a lien in plaintiff's favor.

No error.