INTERNATIONAL SERVICE INSURANCE COMPANY v. IOWA NATIONAL MUTUAL INSURANCE COMPANY

No. 6921SC288

(Filed 2 July 1969)

**Insurance § 88—  automobile dealers' liability insurance — coverage — transfer of automobile title**

Although automobile dealer did not effect execution, assignment and delivery of title certificate to the purchaser of a used automobile until the day after occurrence of the accident involving the automobile, trial court properly concluded that the automobile was not owned by the dealer on the accident date and therefore was not within the coverage of the dealer's liability policy, where there is evidence sufficient to support findings of fact that (1) prior to the accident the purchaser agreed to buy the automobile at a stated price, paid a down payment thereon, executed a note for balance of the purchase price, received a written bill of sale and took possession of the automobile, (2) the assignment of title and application for new title were signed in blank by the purchaser and the dealer, and (3) the automobile, with no license plate thereon, was delivered and parked at the purchaser's home with the understanding that the purchaser was to return to the dealer the following week with an FS-1 form showing insurance coverage and was at that time to receive the completed title certificate. G.S. 20-72(b), G.S. 20-75.

APPEAL by plaintiff from *Armstrong, J.,* 6 January 1969 Session, FORSYTH Superior Court.

This is an action for a declaratory judgment instituted by International Service Insurance Company (plaintiff) against Iowa National Mutual Insurance Company (defendant) for a declaration of its rights and duties based upon questions of automobile ownership, permission, coverage and duty to pay under policies of automobile liability insurance issued by plaintiff and defendant. The parties waived jury trial and submitted the case to the trial court on stipulated facts and exhibits. The court entered judgment making findings of fact substantially as follows:

On and prior to 27 May 1963 plaintiff had in effect an assigned risk automobile liability policy issued to James Walter Zimmerman. On and prior to 27 May 1963 defendant had in effect an automobile liability insurance policy issued to Piedmont Auto Finance Company of High Point, North Carolina (Piedmont). Defendant's policy provided in pertinent part that coverage was afforded on vehicles owned by the named insured, Piedmont, and that coverage was afforded to any person while using a vehicle owned by Piedmont provided the actual use of the vehicle was with Piedmont's permission.

On or prior to 24 May 1963, Piedmont took lawful possession of a 1958 Ford automobile by repossession. On Saturday, 25 May 1963, John Wesley Zimmerman agreed to purchase the 1958 Ford automobile from Piedmont for the sum of $695.00, paid a $100.00 down payment, received a bill of sale on said automobile, and signed a note for the balance of the purchase price and interest charges. On the same date, 25 May 1963, an official of Piedmont signed in blank the assignment of title on the back of the title certificate to said automobile, and John Zimmerman signed in blank the purchaser's application for new certificate of title on the back of the title certificate. It was the understanding of W. E. Keck, an official of Piedmont, that John Zimmerman was to obtain liability insurance over the weekend and return to Piedmont on Tuesday, 28 May 1963, with an FS-1 form, at which time the title certificate was to be completed and turned over to him, and he would purchase a license plate. Also, on the same date, 25 May 1963, the automobile was delivered to John Zimmerman's home and parked behind his house; the dealer license plate was removed at that time and the automobile was left without a license plate on it; John Zimmerman went to the Statewide Insurance Agency of High Point, North Carolina, and filled out an application for automobile liability insurance under the North Carolina assigned risk plan, which application was mailed to North Carolina Department of Insurance in Raleigh; and, John purchased, through Piedmont, collision insurance on the automobile with American Security Insurance Company.

James Walter Zimmerman is the brother of John Zimmerman. Both were over 21 years of age at all times pertinent to this action and they did not reside at the same household. On 27 May 1963, James Zimmerman was driving the 1958 Ford with the permission of his brother John, and was involved in an accident with a vehicle being operated by James Floyd Pendry. John Zimmerman was not present in the automobile at the time of the accident. At the time of the accident the 1958 Ford displayed a 1963 North Carolina license

plate previously issued to James Zimmerman on a vehicle other than the one he was driving when involved in the accident.

On Tuesday, 28 May 1963, John Zimmerman received by mail an FS-1 form dated 27 May 1963 and showing effective date of 28 May 1963 stating that his application for insurance had been approved and assigned to American Motorist Insurance Company. On this date he returned to the office of Piedmont; he did not advise Piedmont that the 1958 Ford had been involved in an accident on the previous day; at that time, the transfer of title and application for new title certificate on the back of the title were completed and notarized; and, shortly thereafter, he took the FS-1 form and completed title certificate and purchased a license plate for the 1958 Ford.

In August 1963, plaintiff was notified of possible claims arising out of the accident. Pendry instituted a civil action against James Zimmerman in November 1963, alleging damages in excess of $5,000.00 and answer was filed on behalf of James Zimmerman in December 1963, by attorneys retained by plaintiff.

The first notice of the accident received by defendant was on 8 April 1964 when plaintiff's attorney notified defendant that plaintiff was taking the position that defendant had primary coverage with regard to the Pendry suit. On 5 May 1964 defendant denied coverage and so notified plaintiff. On 22 May 1964 plaintiff's attorney again notified defendant that plaintiff contended primary coverage was with defendant and forwarded to defendant copies of the complaint and answer in the Pendry action. Later notice was sent by plaintiff's attorney to defendant that the case was scheduled for trial on 26 October 1964; that there was a possibility of settlement; and that unless plaintiff's attorney heard from defendant by 26 October 1964 the case would be settled if possible. Defendant continued its denial of coverage and plaintiff continued to defend James Zimmerman, but maintained its position that its coverage was secondary. On 26 October 1964 the case was settled for $3,800.00. Plaintiff paid this judgment on behalf of James Zimmerman and in addition paid court costs of $32.75 and attorneys' fees in the amount of $738.08.

The amount of settlement, the costs and attorneys' fees paid by plaintiff were fair and reasonable. Employees of Piedmont had not met James Zimmerman prior to the accident, and he had no part in the dealings between John Zimmerman and Piedmont.

Pursuant to the foregoing findings of fact, the trial judge concluded as a matter of law:

"1. Ownership of the 1958 Ford automobile involved in the accident passed from Piedmont to John prior to May 27, 1963.

"2. Ownership of said automobile having passed from Piedmont prior to the date of the accident, the automobile was not owned by Piedmont on the accident date, and the Iowa policy therefore does not afford coverage on the automobile.

"3. Further, irrespective of ownership, the stipulated facts and reasonable inferences to be drawn therefrom do not establish that James was operating the automobile with the permission, express or implied, of Piedmont at the time of the accident; and for this additional reason, no coverage is afforded by the Iowa policy."

Pursuant to these findings of fact and conclusions of law, judgment was entered that the plaintiff recover nothing of the defendant. From this judgment, plaintiff appealed.

*Deal, Hutchins & Minor, by William K. Davis and Edwin T. Pullen, for plaintiff appellant.*

*Hudson, Petree, Stockton, Stockton & Robinson, by J. Robert Elster and C. P. Craver, Jr., for defendant appellee.*

BROCK, J.

Plaintiff assigns as error the conclusions of law by the trial judge. Plaintiff argues that the statutory provisions relating to transfer of ownership were not complied with until 28 May 1963, one day after the accident, and that ownership of the 1958 Ford remained in Piedmont until that date; that Piedmont gave "broad and unfettered custody, dominion and control "of the automobile to John Zimmerman on 25 May 1963 and impliedly permitted him to allow his brother, James Zimmerman, to use it, thereby bringing James within the coverage of defendant's policy. Plaintiff, however, concedes that the question of permission arises only if ownership remained in Piedmont at the time of the accident on 27 May 1963. Thus the question before us for determination is whether the facts found by the trial court support the conclusion of law that ownership of the automobile involved in the accident passed from Piedmont to John Zimmerman prior to the date of said accident for purposes of tort liability and insurance coverage.

The statutes pertinent to the transfer of title or interest in a motor vehicle were amended in 1961, and as amended in 1961, they are applicable to the present case. G.S. 20-72(b) and G.S. 20-75, as

amended by Chap. 835, Session Laws 1961, provide: "Transfer of ownership in a vehicle . . . is not effective until the provisions of this subsection have been complied with." It is stipulated that there was no execution, assignment and delivery of the title certificate from Piedmont to John Zimmerman until the day after the accident occurred.

The 1961 amendment to G.S. 20-72(b) and G.S. 20-75 was interpreted by our Supreme Court in *Indemnity Co. v. Motors, Inc.,* 258 N.C. 647, 129 S.E. 2d 248. There the defendant motor company had purchased an automobile from an individual, and thereafter resold it to another individual. Upon receipt of the purchase price, the dealer endorsed the title certificate to the purchaser, but did not forward it to the Department of Motor Vehicles in Raleigh prior to the accident; but rather delivered it to a finance company which had a lien on the automobile. The purchaser was involved in an accident while operating the automobile, and claimants sought to establish ownership of the automobile in the motor company so as to recover under the motor company's liability insurance policy. The insurance company brought a declaratory judgment action seeking an adjudication that ownership had passed to the purchaser; and that it therefore had no coverage as to the accident. Under the 1961 amendment, the Supreme Court held that ownership had passed to the purchaser prior to the accident, even though the title certificate had not been forwarded to Raleigh. In so holding, the Supreme Court held that the 1961 amendment did not change the pre-existing law with regard to ownership for purposes of tort liability or insurance coverage. The court pointed out that the preamble to the amendments as contained in Chap. 835, Session Laws 1961, made it clear that the purpose of the amendments was to clarify and strengthen the *lien law* with regard to transfer of title. In reference to G.S. 20-73 which requires the transferee of a motor vehicle to make application for a new certificate of title within twenty days of the transfer, the Court stated: "There is nothing in the statute which suggests dealer, a vendor, should be penalized and held liable because of the failure of Bradshaw, a purchaser, to perform his statutory duty." *Indemnity Co. v. Motors, Inc., supra,* p. 652.

Another case in point in this regard is *Luther v. Insurance Co.,* 262 N.C. 716, 138 S.E. 2d 402. There the plaintiff had obtained a judgment against one Lamm arising out of an automobile accident which occurred between the plaintiff's automobile and a 1956 Ford automobile being operated by Lamm. The plaintiff alleged that the 1956 Ford automobile was actually owned by Lee Motor Company at the time of the accident, and was being operated by Lamm with

the permission of Lee Motor Company. On such allegations, the plaintiffs sought to collect their judgments from the liability insurance carrier for Lee Motor Company. The plaintiffs' evidence tended to show that about three weeks prior to the accident Lamm had traded in another automobile to Lee and agreed to purchase the 1956 Ford which he was operating at the time of the accident. The trade-in automobile was treated as a down payment on the 1956 Ford. *The title certificate on the 1956 Ford had not been transferred to Lamm prior to the accident.* Lamm was not to obtain title to the 1956 Ford until he completed making payments. The trial court entered judgment of nonsuit, and the plaintiffs appealed. The Supreme Court affirmed the judgment of nonsuit, holding that the plaintiffs had failed to establish ownership in Lee Motor Company for purposes of tort liability and insurance coverage.

In the present case, the evidence is sufficient to support findings of fact that prior to the accident John Zimmerman had agreed to purchase the automobile at an agreed price of $695.00, paid a down payment of $100.00, executed a note for the balance of the purchase price, taken a written bill of sale, taken possession of the automobile, and that the assignment of title and application for new title had been signed in blank by the parties. The automobile had been delivered and parked at John Zimmerman's house, with no license plate on it, and with the understanding that John was to return to Piedmont after the weekend with an FS-1 form, and was at that time to pick up the completed title certificate and obtain a license plate.

The stipulated facts and exhibits support the findings and the conclusion of the trial judge that at the time of the accident the 1958 Ford was not owned by Piedmont and, therefore, did not come within the coverage of defendant's policy.

The judgment of the court below is

Affirmed.

CAMPBELL and MORRIS, JJ., concur.