172 S.E.2d 55 (1970)
276 N.C. 243
INTERNATIONAL SERVICE INSURANCE COMPANY
v.
IOWA NATIONAL MUTUAL INSURANCE COMPANY.
No. 33.
Supreme Court of North Carolina.
January 30, 1970.
*58 Deal, Hutchins & Minor, by William K. Davis and Edwin T. Pullen, Winston-Salem, for plaintiff-appellant.
Hudson, Petree, Stockton, Stockton & Robinson, by J. Robert Elster, Winston-Salem, for defendant appellee.
HUSKINS, Justice.
The policy of liability insurance issued by Iowa to Piedmont Auto Finance Company affords coverage not only to Piedmont and its officers and agents but also to "any person while using an owned automobile * * * provided the actual use of the automobile is by the named insured or with his permission. * * *"
Plaintiff contends (1) that the provisions of G.S. § 20-72(b) relating to transfer of ownership were not complied with until 28 May 1963, one day after the accident, so that ownership of the 1958 Ford remained in Piedmont until that date; and (2) that Piedmont gave "broad and unfettered custody, dominion and control" of the vehicle to John Wesley Zimmerman on 25 May 1963 and thus impliedly permitted him to allow his brother James Zimmerman to use the vehicle thereby bringing James within the coverage of defendant's policy. Since the question of permission arises only if ownership remained in Piedmont at the time of the accident on 27 May 1963, we look first at the question of ownership.
It is well settled, we think, that, prior to 1961, a purchaser of a motor vehicle acquired title notwithstanding the vendor's failure to deliver a certificate of title or the purchaser's failure to make application for a new certificate to the Department of Motor Vehicles. Carolina Discount Corporation v. Landis Motor Co., 190 N.C. 157, 29 S.E. 414; Southern Auto Insurance Co. v. Pittman, 253 N.C. 550, 117 S.E.2d 423; Godwin v. Harleysville Mutual Casualty Co., 256 N.C. 730, 125 S.E.2d 23; Community Credit Co. v. Norwood, 257 N.C. 87, 125 S.E.2d 369; Home Indemnity Co. v. West Trade Motors Inc., 258 N.C. 647, 129 S.E.2d 248; Luther v. Nationwide Mutual Insurance Co., 262 N.C. 716, 138 S.E.2d 402; National Bank of Sanford v. Greensboro *59 Motor Co., 264 N.C. 568, 142 S.E.2d 166.
In Carolina Discount Corporation v. Landis Motor Co., supra, decided in 1925, it was held that a sale of personal property is not required to be evidenced by any written instrument in order to be valid, and that a statute requiring issuance of a "certificate of title" to the purchaser of an automobile, and making failure to do so a misdemeanor, was merely a police regulation to protect the general public from fraud, imposition and theft of motor vehicles. In Peek v. Trust Co., 242 N.C. 1, 86 S.E.2d 745, the lower court charged: "Now, the law does not prohibit the sale of a motor vehicle without transfer and delivery of certificate of registration of title; in other words, one can sell a motor vehicle on one day and the title pass, and deliver or transfer the paper certificate of title on a later date." In approving that instruction, this Court said: "[I]t is observed that the instruction as given is precisely in accord with the decision in Carolina Discount Corporation v. Landis Motor Co., 190 N.C. 157, 129 S.E. 414."
In National Bank of Sanford v. Greensboro Motor Co., supra (264 N.C. 568, 142 S.E.2d 166), Rodman, J., reviewed the history of this question and noted that "[no]twithstanding the conclusion reached in 1925, litigants continued their efforts to secure a judicial declaration that certificates of title for motor vehicles issued under then existing statutes were analogous to statutory certificates of title for real estate, registered as to title, pursuant to the provisions of c. 43 of the General Statutes." We had last answered these contentions in Southern Auto Finance Co. v. Pittman, supra (253 N.C. 550, 117 S.E.2d 423), decided in December 1960, when we said: "The interpretation given in 1925 has not been rejected by the Legislature. If public policy now requires a different system of establishing ownership and encumbrances on motor vehicles, such policy must be declared by the Legislature. It can enact laws to accomplish that purpose. We have neither the power nor the desire to usurp its prerogative."
Following the Pittman decision in 1960, the General Assembly (which convened in February 1961) amended G.S. § 20-72(b) and G.S. § 20-75, effective 1 July 1961, by adding at the end of each section the following sentence: "Transfer of ownership in a vehicle by an owner (by a dealer) is not effective until the provisions of this subsection have been complied with." See sections 8 and 9, Chapter 835, Session Laws 1961. The prompt enactment of these amendments following our decision in Pittman impels the conclusion that it was the legislative intent to change what was formerly the law. "In construing a statute with reference to an amendment it is presumed that the legislature intended either (a) to change the substance of the original act, or (b) to clarify the meaning of it." Childers v. Parker's, Inc., 274 N.C. 256, 162 S.E.2d 481. Here, there was no ambiguity to clarify. Decisions of this Court had made it perfectly clear that the purchaser of a motor vehicle prior to 1 July 1961 acquired title notwithstanding vendor's failure to deliver a certificate of title or the vendee's failure to make application to the Department of Motor Vehicles for a new certificate. It is therefore logical to conclude that the 1961 amendments to G.S. § 20-72(b) and G.S. § 20-75 were intended to and did change the law with respect to transfer of ownership of motor vehicles. 1 Sutherland, Statutory Construction § 1930 (1968 Cum.Supp. to Horack's 3d ed., 1943).
The foundation for this decision was laid in 1925 in our decision in Carolina Discount Corporation v. Landis Motor Co., supra, when we said:
"Plaintiff cites Miller v. Colonial [Underwriters] Ins. Co., 117 Kan. 240, 230 P. 1030, from Kansas; Curry v. Iowa Truck & Tractor Co., 193 Iowa 397, 187 N.W. 36, from Iowa; Crandall v. Shay, 61 Cal.App. 56, 214 P. 450, from California. These cases hold, with much clarity *60 of reasoning and support in numerous precedents, that the sale and transfer of title are void when the statute prohibits such unless in compliance with its requirements. Miller v. Colonial [Underwriters] Ins. Co., supra, deals with the Missouri statute which says: 'Any sale or transfer of such motor vehicle without complying with the provisions of this section shall be fraudulent andvoid.' The provisions referred to are similar to the requirements in the North Carolina statute in detail.
"In Curry v. Iowa Truck & Tractor Co., supra, the Iowa statute provides: `Until said transferee has received said certificate of registration, and has written his name upon the face thereof, delivery and title to said motor vehicle shall be deemed not to have been made and passed.'
"In Crandall v. Shay, supra, the quoted section of the statute is the same as in the Curry case, supra, with this in addition: 'And said intended transfer shall be deemed to be incomplete and not to be valid or effective for any purpose.'
"The pivotal provision of the statutes in these cases are absent from our statute. The North Carolina statute contents itself with penal provisions, operative on the persons who violate them, including the prohibition of the use of the vehicle on the highways, and no more. Our Legislature could have provided, as did Iowa, Missouri, and California, but it is clear that it did not, and we cannot extend the act beyond its provisions, however laudable the purpose or beneficent the desired result."
The Legislature took positive action on 15 June 1961 to include in our statutes this "pivotal provision" lacking in 1925 by amending G.S. § 20-72(b) and G.S. § 20-75, effective 1 July 1961 to provide: "Transfer of ownership in a vehicle by an owner (by a dealer) is not effective until the provisions of this subsection have been complied with."
We hold therefore that after 1 July 1961, the effective date of the amendments, no title passed to the purchaser of a motor vehicle until (1) the certificate of title has been assigned by the vendor, (2) delivered to the vendee or his agent, and (3) application made for a new certificate of title. This accords with prior decisions in National Bank of Sanford v. Greensboro Motor Co., supra, and Community Credit Co. v. Norwood, supra.
Cases relied on by the Court of Appeals are not controlling. Luther v. Nationwide Mutual Insurance Co., supra (262 N.C. 716, 138 S.E.2d 402), involved the sale and purchase of an automobile in 1957 and its involvement in an automobile accident prior to the effective date of the 1961 amendments. The court necessarily applied the former law to the facts of that case. Home Indemnity Co. v. West Trade Motors, Inc., supra (258 N.C. 647, 129 S.E.2d 248), is factually distinguishable. There, the facts affirmatively show that on 16 September 1961 the dealer (vendor) had, as required by the statute, delivered the duly assigned certificate of title together with the purchaser's application for a new certificate to the purchaser's agent, Smart Finance Company. It then became the legal duty of the vendee to make application for a new certificate of title within twenty days; and even though the certificate of title was delivered to a lien holder, it was nonetheless the duty of the purchaser to see that it was forwarded to the Department of Motor Vehicles within twenty days. G.S. § 20-73; G.S. § 20-74. This was not done. The purchaser failed to perform his statutory duty, and the certificate of title and application for a new certificate had not been presented to the Department of Motor Vehicles on 4 November 1961 when the purchaser, operating said vehicle, was involved in a collision. It was held that dealer should not be penalized because of the failure of the purchaser to perfrom his duty. The dealer had done all the law required of him.
*61 In the case before us, however, vendor had not executed and acknowledged an application for a new certificate of title. Vendor had not parted with possession of the certificate of title and could still have used it to entrap the unwary or for any other purpose. "A decision of the Supreme Court must be interpreted within the framework of the facts of that particular case." Howard v. Boyce, 254 N.C. 255, 118 S.E.2d 897; accord, Carpenter v. Carpenter, 244 N.C. 286, 93 S.E.2d 617.
We now consider whether James Zimmerman was driving the 1958 Ford with the permission, express or implied, of its owner, Piedmont, at the time of the accident.
"Where express permission is relied upon it must be of an affirmative character, directly and distinctly stated, clear and outspoken, and not merely implied or left to inference. On the other hand, implied permission involves an inference arising from a course of conduct or relationship between the parties, in which there is mutual acquiescence or lack of objection under circumstances signifying assent. Hinton v. Indemnity Insurance Co. of North America, 175 Va. 205, 8 S.E.2d 279 (Va. 1940)." Hawley v. Indemnity Insurance Co., 257 N.C. 381, 126 S.E.2d 161; accord, Hooper v. Maryland Casualty Co., 233 N. C. 154, 63 S.E.2d 128.
It is disclosed by the agreed statement of facts that employees of Piedmont had not met James prior to the accident and James had no part in the dealings between John and Piedmont. This conclusively rebuts any suggestion of express permission. In fact, plaintiff makes no such contention. Rather, plaintiff contends John had express permission to do with the vehicle as he pleased because Piedmont had attempted to make a sale to John and maintains that ownership had been transferred to him. Therefore, plaintiff says, no limitations whatever were placed upon John's use of the automobile by Piedmont; rather, exclusive possession and control were given to John, including the implied permission for John to allow his brother James to drive.
The fallacy of plaintiff's position lies in the assumption that John had Piedmont's permission to operate the vehicle upon the public highways. When the vehicle was delivered to John's home, Piedmont parked it and removed the dealer tags. It was understood that John would obtain liability insurance over the weekend and return to Piedmont on Tuesday with an FS-1 form at which time the title certificate would be delivered to John so he could purchase license tags. These facts negative the suggestion that John had Piedmont's permission to operate the vehicle, illegally or otherwise, until after he had obtained his insurance and purchased license tags. Piedmont's erroneous argument that ownership had been transferred to John does not alter these facts. The clear inference is that Piedmont neither intended nor anticipated that Johnmuch less anyone elsewould operate the vehicle until insurance and license tags had been obtained. Its illegal operation under the circumstances here disclosed cannot be characterized as a permissive use within the meaning of Piedmont's liability policy. Any other interpretation requires reaching and stretching which we are unwilling to do. For an exhaustive discussion of cases in which the courts have considered the extent of coverage afforded by the omnibus clause, see Annotation: Omnibus Clause of Automobile Liability Policy as Covering Accidents Caused by Third Person who is Using Car with Consent of Permittee of Named Insured, 4 A.L.R.3d 10.
Since John had no permission, express or implied, to operate the car at the time in question, we hold that he was without authority to extend driving privileges on illegal terms to his brother James and thereby bind the owner and the owner's liability carrier. "Failure to show coverage requires nonsuit." Bailey v. General Insurance Co. of America, 265 N.C. 675, 144 S. *62 E.2d 898; Kirk v. Nationwide Mutual Insurance Co., 254 N.C. 651, 119 S.E.2d 645; Slaughter v. State Capital Life Insurance Co., 250 N.C. 265,108 S.E.2d 438.
It should be noted that, effective 1 July 1963, G.S. § 20-72(b) and G.S. § 20-75 were again materially changed by Chapter 552, Session Laws 1963.
The decision of the Court of Appeals is modified to conform with this opinion.
Modified and affirmed.
MOORE, J., took no part in the consideration or decision of this case.