MARY PRIDGEN SHEARIN, ADMINISTRATRIX OF THE ESTATE OF JOHN JACOB PRIDGEN, DECEASED, v. GLOBE INDEMNITY COMPANY.

(Filed 16 June, 1966.)

**1. Judgments § 33—**

A judgment of involuntary nonsuit on the ground of the insufficiency of the evidence offered at that trial does not bar a subsequent action unless the evidence at the subsequent trial is substantially identical with that offered in the first.

**2. Insurance § 63—**

Defense by insurer of an action brought by the injured third party against insured does not waive insurer's defense of noncoverage when insurer requires insured to sign an agreement preserving to insured the right to assert the defense of noncoverage.

**3. Insurance § 54—**

A garage liability policy covers any automobile owned by or in charge of the named insured and used in operations necessary or incidental to insured's business by a person operating the vehicle with the permission of insured.

**4. Automobiles § 4—**

Prior to 1961, a purchaser of a motor vehicle might acquire title notwithstanding failure of his vendor to deliver vendor's certificate of title, or vendee's failure to apply for a new certificate.

**5. Sales § 3—**

Whether title passes to the purchaser upon part payment of the purchase price depends upon the agreement between the parties as to whether title should then pass or whether title should not pass until the performance of some condition.

**6. Insurance § 54— Evidence held to show that prospective purchaser was not operating vehicle in question with permission of dealer within coverage of garage liability policy.**

The evidence tended to show that an automobile dealer delivered the vehicle in question to a prospective purchaser upon a small cash payment with the understanding that the purchaser would pay the balance by a specified time, that the purchaser subsequently made two other small payments, that the dealer's agent then advised the purchaser to pay the balance due by a specified date or surrender the car, that the purchaser did neither, and that the accident in suit occurred two days after the time set by the dealer for the payment of the balance of purchase price or the surrender of the vehicle to the dealer. *Held:* Even conceding evidence sufficient to show title in the dealer at the time the accident occurred, the evidence disclosed that the prospective purchaser was not using the vehicle with the permission of the dealer at the time of the accident within the coverage of the dealer's garage liability policy, and therefore nonsuit was properly entered in an action by the injured third party against insurer after recovery of an unsatisfied judgment against the operator of the vehicle.

MOORE, J., not sitting.

APPEAL by plaintiff from *Bundy, J.,* September-October 1965 Civil Session of WILSON.

Plaintiff instituted this civil action November 21, 1963, to recover from Globe Indemnity Company (Globe) the amount ($16,-666.04 with interest and costs) of a judgment she obtained at January 1962 Civil Term of Wilson Superior Court against T. R. Uzzell, Administrator of the estate of Clarence Haywood Speight, deceased.

Plaintiff seeks to recover under a "Garage Liability Policy" issued by Globe to Boyette Auto Exchange, Inc. (Auto Exchange, Inc.) in which Globe agreed "(t)o pay on behalf of the insured all sums (not in excess of $25,000.00) which the insured shall become legally obligated to pay as damages because of bodily injury, sickness or disease, including death at any time resulting therefrom, sustained by any person, caused by accident and arising out of the hazards" thereinafter defined, including "(t)he ownership, maintenance or use . . . in connection with the above defined operations (automobile sales agency, repair shop, service station, storage garage or public parking place, and all operations necessary or incidental thereto) . . . of (1) any automobile owned by or in charge of the named insured and used principally in the above defined operations . . ." The policy, which was in full force and effect on May 12, 1958, provides that "the unqualified word 'insured' includes the named insured" and "(2) any person while using an automobile covered by this policy, and any person or organization legally responsible for the use thereof, provided the actual use of the automobile is by the named insured or with his permission."

Auto Exchange, Inc., was engaged in the business of buying and selling used cars. Its principal place of business was in Wilson, N. C.

On May 12, 1958, a 1952 Chevrolet, occupied by John Jacob Pridgen (Pridgen), plaintiff's intestate, and Clarence Haywood Speight (Speight), ran off the road and overturned. Pridgen sustained serious injuries and died July 24, 1958, as a result thereof. Speight died May 12, 1958, the date of the wreck.

In the prior action against the estate of Speight, in which plaintiff obtained a judgment for $16,666.04 with interest and costs, the verdict established Speight was operating the car when the wreck occurred and that Pridgen's fatal injuries were proximately caused by Speight's negligence.

Plaintiff, in her complaint herein, alleged that, on May 12, 1958, Auto Exchange, Inc., was the owner of said 1952 Chevrolet; that Speight, a prospective purchaser, was operating it with the permission of Auto Exchange, Inc.; and that Speight's liability for Pridgen's injuries and death was covered by the policy issued by Globe to Auto Exchange, Inc.

Answering, defendant denied plaintiff's said allegations.

Defendant alleged, as a plea in bar, a judgment of involuntary nonsuit entered in a prior action against Auto Exchange, Inc., referred to below.

Plaintiff, by reply, alleged that Globe made a full investigation of the facts surrounding the accident of May 12, 1958, and with full knowledge thereof did not deny coverage but assumed control of and, by its counsel, conducted the defense of the prior action against Auto Exchange, Inc.; and that defendant is estopped thereby from denying coverage.

Pertinent facts concerning prior litigation growing out of said accident of May 12, 1958, are stated below.

On June 26, 1958, Pridgen instituted a civil action against Auto Exchange, Inc., in the Superior Court of Wilson County. Therein, on July 12, 1958, before filing complaint, Pridgen examined adversely T. R. Boyette (Boyette), the president of Auto Exchange, Inc. After Pridgen's death on July 24, 1958, Mary H. Pridgen, the administratrix of Pridgen's estate, was substituted as party plaintiff; and in November 1958 said administratrix filed a complaint in which she alleged Pridgen's injuries and death were caused by the actionable negligence of Speight in the operation of said Chevrolet on May 12, 1958, and that she was entitled to recover damages from Auto Exchange, Inc., on account thereof. Auto Exchange, Inc., answered. Thereafter, the substituted plaintiff, Pridgen's administratrix, examined Boyette adversely on December 1, 1959. Upon the trial of said action at March 1960 Civil Term, the court (Sharp,

J.), at the conclusion of plaintiff's evidence, entered judgment of involuntary nonsuit. Plaintiff gave notice of appeal. However, she did not perfect her appeal. The defense of said action in the name and behalf of Auto Exchange, Inc., was conducted by Globe through its attorneys.

On May 31, 1960, said administratrix of Pridgen's estate instituted the action (referred to above) against the estate of Speight. A judgment of involuntary nonsuit entered therein at September-October 1960 Civil Term of the Superior Court of Wilson County was reversed by this Court in *Pridgen v. Uzzell*, 254 N.C. 292, 118 S.E. 2d 755. Subsequently, at January 1962 Civil Term, the plaintiff obtained therein the judgment for $16,666.04 with interest and costs on which she bases the present action. The defense of said action in the name and behalf of the estate of Speight was conducted by Globe through its attorneys.

Globe received notice of and investigated said accident of May 12, 1958. A Non-Waiver Agreement, signed by Auto Exchange, Inc., provided that Globe's investigation "shall not be considered a waiver of any of the conditions of the policy" or as an affirmance or denial of liability thereunder. Thereafter, Globe defended the action against Auto Exchange, Inc.

Globe's defense of the action against the estate of Speight was under the original Non-Waiver Agreement of June 22, 1960, and Non-Waiver Agreement Supplement of April 5, 1961. These agreements were executed by T. R. Uzzell, administrator of the estate of Clarence Haywood Speight, deceased. The original Non-Waiver Agreement provides specifically that Globe reserved all rights to deny coverage as to Speight and that its defense of said action was not a waiver of but was without prejudice to its said rights. The Non-Waiver Agreement Supplement contains similar provisions in relation to the payment by Globe of costs taxed in the Supreme Court against the estate of Speight in connection with said appeal.

Additional factual data will be set forth in the opinion.

At the conclusion of plaintiff's evidence, the court, allowing defendant's motion therefor, entered judgment of involuntary nonsuit. Plaintiff excepted and appealed.

*Vernon F. Daughtridge and Narron, Holdford & Holdford for plaintiff appellant.*

*Gardner, Connor & Lee for defendant appellee.*

BOBBITT, J. Whether the judgment of involuntary nonsuit at March 1960 Civil Term in the action against Auto Exchange, Inc., was entered on account of the insufficiency of the evidence as to

ownership of the car by Auto Exchange, Inc., *or* operation thereof by Speight, *or* actionable negligence of Speight *or* that Speight was the agent of Auto Exchange, Inc., does not appear. Suffice to say, adjudication that the evidence then offered was insufficient, for undisclosed reasons, to warrant submission of that case to the jury, is not a bar to this action.

Nor is there merit in plaintiff's plea that Globe, by defending the action against Auto Exchange, Inc., waived its right to deny coverage as to Speight. Globe's policy covered the liability, if any, of Auto Exchange, Inc., the named insured. Globe defended the action against the estate of Speight under full reservation of its right to deny coverage as to Speight. See *Insurance Co. v. Insurance Co.*, 266 N.C. 430, 146 S.E. 2d 410.

The garage liability policy issued by Globe to Auto Exchange, Inc., does not list or describe any specific automobile(s). It covers "any automobile owned by or in charge of the named insured" and used principally "for the purpose of an automobile sales agency, repair shop, service station, storage garage or public parking place, and all operations necessary or incidental thereto." A person operating *such an automobile* is covered by the policy if his actual use thereof is with the permission of the named insured. *Godwin v. Casualty Co.*, 256 N.C. 730, 125 S.E. 2d 23; *Luther v. Insurance Co.*, 262 N.C. 716, 138 S.E. 2d 402.

The crucial question is whether the evidence was sufficient to permit a jury to find that the 1952 Chevrolet involved in the accident of May 12, 1958, was then owned by Auto Exchange, Inc., "and used principally in the above defined operations" (automobile sales agency, etc.), and that its actual use by Speight on May 12, 1958, was with the permission of Auto Exchange, Inc.

Plaintiff offered in evidence the adverse examination of C. M. Link, Claims Manager and Adjuster for Globe. The pertinent facts disclosed therein and the exhibits attached thereto are set forth in our preliminary statement.

A witness for plaintiff, Mrs. Florence L. Sutton, testified in substance, except when quoted, as follows: During 1958 she was secretary-treasurer of Dixie Auto Finance Company (Dixie). Early in 1958, Dixie financed for Wortle Brantley (Brantley) a 1952 Chevrolet Brantley had purchased from Auto Exchange, Inc. Brantley's note to Dixie was endorsed by Boyette, individually. The title certificate in Dixie's possession showed the 1952 Chevrolet was registered in the Department of Motor Vehicles in the name of Brantley and that Dixie had a lien thereon executed by Brantley. Brantley was unable to make the payments and requested Dixie "to repossess the car." Brantley did not execute an assignment of his title or "sign

any sort of consent for surrender of the car." Dixie's lien thereon was not foreclosed. Boyette "wholesaled this car" with Dixie. Boyette signed a "wholesale note" to Dixie against this particular car "approximately April of 1958" and paid Dixie the balance on the Brantley note. Mrs. Sutton testified: "The vehicles that were wholesaled by T. R. Boyette were the vehicles of Boyette Auto Exchange, Inc." In April 1958, Boyette, in a telephone conversation, told her "he had made a sale or disposition of that automobile," and asked her to finance the car for Speight. Dixie refused to do so. Boyette paid off the "wholesale note" in June 1958, at which time the title certificate issued to Brantley was delivered to him.

An unsigned accident report dated May ......, 1958, plaintiff's Trial Exhibit No. 11, identified "Boyette Auto Exchange" as the policyholder; and under the heading, "Insured Automobile," the following appears: "Owner's name if not owned by Policyholder: Clarence Haywood Speight."

The foregoing is a summary of plaintiff's admitted evidence. It must be considered in the light of the fact that "(p)rior to 1961 a purchaser of a motor vehicle acquired title notwithstanding the failure of his vendor to deliver vendor's certificate of title or vendee's failure to apply for a new certificate." *Credit Co. v. Norwood*, 257 N.C. 87, 90, 125 S.E. 2d 369, and cases cited.

The admitted evidence tends to show Auto Exchange, Inc., had sold the 1952 Chevrolet to Speight prior to May 12, 1958. Hence, it was not sufficient to withstand defendant's motion for judgment of nonsuit.

Plaintiff offered in evidence the adverse examinations of Boyette taken July 12, 1958, and December 1, 1959, in the prior action against Auto Exchange, Inc. Defendant's objections thereto were sustained. Plaintiff contends the admitted *and* excluded evidence was sufficient to withstand defendant's motion for nonsuit.

The testimony of Boyette on said adverse examinations related to the ownership of the 1952 Chevrolet on May 12, 1958, and to the circumstances with reference to Speight's possession and use thereof. Plaintiff contends this testimony was competent because Auto Exchange, Inc., was defended in said action by Globe, and Globe's attorneys were present and cross-examined Boyette. Defendant contends this testimony was incompetent and properly excluded. Suffice to say, a serious question exists as to the competency of this evidence; and authority bearing directly on the question was not cited in the briefs nor discovered by our research. Under these circumstances, we deem it appropriate to consider whether this testimony, if competent, would suffice to require submission to the jury.

On said adverse examinations, Boyette testified in substance, except when quoted, as follows:

Auto Exchange, Inc., obtained possession of the 1952 Chevrolet from Dixie. It borrowed the money from Dixie "on this car" to pay off Brantley's debt. Dixie continued to hold the (Brantley's) title certificate as collateral.

In April 1958, Boyette saw Speight about buying a car. He had been advised that Speight could buy a car and pay cash. Later, Speight came to the place of business of Auto Exchange, Inc. He advised Boyette he knew the 1952 Chevrolet, and the former owner thereof, and "took the car and tried it out a little bit." Speight said "he would like to have the car." They agreed on a price of $495.00 cash. Speight made a deposit of $40.00 or $45.00. He asked Boyette "if it was all right for him to drive the car," saying "he knew he would have his money in a few days." (Note: This transaction occurred on or about April 18, 1958, and from then until the wreck on May 12, 1958, Speight had the car.)

When Speight came back the following Saturday, he told Boyette "he didn't have the money and expected to get it in a day or two." At that time he made another payment of $20.00 on the car. The following Saturday Speight returned, saw Boyette's brother, and "didn't say anything but just told him he wanted to pay (Boyette) $20.00." When advised of this visit and $20.00 payment, Boyette stated to his brother: "Well, George, we have got to get that thing straight; he has got to pay for the automobile or we have got to bring it in." On the following Wednesday or Thursday, Boyette went to see Speight. Meanwhile, Boyette had learned that Speight's driver's license had been revoked. Boyette saw Speight at his home at Lamm's Crossroads. Boyette testified: "(H)e was fixing to leave in his car." Again: "I talked to him and told him that we had to get it straightened out, that it had to be straightened out, 'You will have to bring the car around or you will have to pay for it,' and he assured me that he could straighten it out the following Saturday." Boyette testified he did not take possession of the 1952 Chevrolet on this occasion because he "didn't have a driver to drive the car." On Saturday, Speight did not bring the car around or pay for it. Boyette and his brother planned to go get it on Monday, May 12, 1958, the day of the wreck.

While there is ample evidence to support a finding that the 1952 Chevrolet was sold by Auto Exchange, Inc., to Speight under an indefinite credit arrangement, the admitted *and* excluded evidence, when taken in the light most favorable to plaintiff, does not compel this conclusion. "The effect of a part payment with respect to the transfer of title depends primarily on the terms of the contract and

the intention of the parties, and also whether, as between the parties, anything still remains to be done with reference to the subject matter of the sale." 77 C.J.S., Sales § 266(b). "Property may be delivered with the understanding that title thereto shall not pass until the performance of some condition, and such understanding or intention is given effect as between the parties." 46 Am. Jur., Sales § 433, p. 603. With reference to cash sales, see *Wilson v. Finance Co.,* 239 N.C. 349, 79 S.E. 2d 908, and decisions and authorities cited.

If Auto Exchange, Inc., was the owner of the 1952 Chevrolet on May 12, 1958, the view most favorable to plaintiff, we are confronted with this question: Was Speight, at the time of the wreck on May 12, 1958, actually using the 1952 Chevrolet with the permission of Auto Exchange, Inc.? If not, the liability of Speight for the operation thereof was not covered by the policy issued by Globe.

Boyette's ultimatum to Speight was that, not later than Saturday, May 10, 1958, Speight was to either pay for the car or deliver it to the place of business of Auto Exchange, Inc. Speight failed to do either.

The burden of showing that the actual use of the car by Speight on May 12, 1958, was with the permission of Auto Exchange, Inc., was on plaintiff. In *Hawley v. Insurance Co.,* 257 N.C. 381, 126 S.E. 2d 161, the policy definition of "insured" included any person using the described motor vehicle, "provided the *actual use* of the automobile is by the named insured . . . or with the permission" of the named insured. Concluding a full discussion, Moore, J., for this Court, said: "Furthermore, the policy in the *instant case* uses the term 'actual use' in reference to permission granted. In our opinion this term confines the coverage to situations where the use made of the vehicle at the time of the accident is within the scope of the permission granted."

The conclusion reached is that Boyette's testimony does not show the actual operation of the car by Speight on Monday, May 12, 1958, was with the permission of Auto Exchange, Inc. Nor does it show that Speight's operation thereof on May 12, 1958, was necessary or incidental to the operation of the automobile sales agency of Auto Exchange, Inc. On the contrary, the only reasonable inference to be drawn therefrom is that Speight had no permission to use the car after the Saturday on which he was obligated either to pay therefor or to surrender possession thereof to Auto Exchange, Inc.

The conclusion reached is that the admitted *and* excluded testimony, when considered in the light most favorable to plaintiff, was

not sufficient to withstand defendant's motion for judgment of non-suit, and that the judgment of nonsuit should be and is affirmed.
    Affirmed.

    MOORE, J., not sitting.