8384

RICHARDSON v. ATLANTIC COAST LUMBER CORPORATION.

1. RECORDING DEEDS—NOTICE—PURCHASE FOR VALUE.—Where one conveys a tract of land to which he then has no title and afterwards reconveys the lands to his grantor, this grantee, being in possession all the time and having the deed of record first conveying title into him, may set up the plea of purchaser for value without notice to the title conveyed by the first grantor.

The reasons of the rule that one examining the records of deeds is not required to look behind the date of the title into the grantors in the chain of title is:

1. That the grantee is estopped by his conduct from relying upon the record as constructive notice to a subsequent purchaser for value without notice, because he is guilty of an act of wrong, by failing to exercise due diligence to ascertain, whether his grantor has a good title, and thus by his negligence participate in casting a cloud upon the title of the owner.

2. A contrary doctrine would not only entail much inconvenience in searching the records, but would render title to land, to a great extent uncertain—such a result being against the spirit of the recording acts, as well as against public policy.

2. REHEARING refused.

Before SHIPP, J., Marion, May term, 1911. Affirmed.

Action by Thomas Monroe Richardson against Atlantic Coast Lumber Corporation. Defendant appeals.

*Mr. M. C. Woods,* for appellant, cites: *Parol testimony as to boundaries should not have been omitted:* 79 S. C. 54; 9 Rich. 50; 43 S. C. 370; 69 S. C. 93. *After acquired title will pass under prior grant:* 16 Cyc. 689, 686; 19 S. C. 16. *One claiming under another who is estopped is himself estopped:* Herm. on Est. 720; 21 S. C. 70.

*Messrs. L. M. Gasque* and *A. F. Woods,* contra, cite: *One cannot assert an after acquired title against the person to whom he conveyed with general warranty when he had no title:* 24 Ency. 75, 115; 23 L. R. A. 561; 1 Rich. Eq. 71; 5 Rich. Eq. 434; Dud. 23; 3 McC. 411; 17 S. C. 592; 19 S. C. 9; 21 S. C. 55; 30 S. C. 302; 43 S. C. 359; 66 S. C. 373; 40 S. C. 168; 20 S. C. 23. *Authorities to the contrary:* 16 Cyc. 698; 11 Am. R. 295; 36 S. W. 288; 117 N. W. 133; 57 N. Y. 97. *Authorities sustaining the ruling below:* 2 Smith's Leading Cas. 734; 8 Paige 361; 14 Mass. 296; 23 Am. Dec. 280; 67 Am. Dec. 362; 32 Am. Dec. 772; 91 Am. Dec. 163; 36 Am. Dec. 136; 34 N. J. Eq. 234; 23 L. R. A. 561; 55 At. 670. *Defendant must show a perfect right to cut:* 59 S. C. 115; 86 S. C. 358; 59 S. C. 131. *Declaration of a party accompanying an act is admissible:* 3 McC. 261; 4 McC. 262; 86 S. C. 367; 79 S. C. 54. *Punitive damages may rest on gross negligence:* 69 S. C. 166; 87 S. C. 527.

The opinion herein was filed on July 22, 1912, but held up on petition for rehearing until

December 2, 1912. The opinion of the Court was delivered by

MR. CHIEF JUSTICE GARY. This appeal raises the question, whether the record of a deed conveying certain la

with the usual covenants of warranty, which includes a tract of which the grantor was not then owner, but which was subsequently conveyed to him by the owner, and afterwards reconveyed to the owner by him, affords such constructive notice, as will prevent the owner, from relying upon the plea of purchaser for valuable consideration without notice, against the grantee of the recorded deed, when it appears that the owner was in the actual possession of his land, under a previously recorded deed, at the time it was wrongfully conveyed.

The facts are thus stated, in the brief of the appellant's attorneys:

"B. Talley Richardson and T. Monroe Richardson are father and son, and reside together in Button's Neck township, Marion county.

"On February 24, 1899, B. Talley Richardson conveyed to Tilghman Lumber Company, with general warranty, certain timber and easement on one hundred and sixty-eight acres, more or less. This conveyance was duly recorded. By successive conveyances, also all duly recorded, the timber and easements conveyed by Richardson to Tilghman Lumber Company, became the property of Atlantic Coast Lumber Corporation. It subsequently transpired, that Richardson did not own all of the land within the boundaries, on which he undertook to convey the timber and easements, but that the boundaries in his grant included about twenty-five acres that belonged to his son, T. Monroe Richardson.

"On October 22, 1904, while the grant to Tilghman Lumber Company was still of force, T. Monroe Richardson conveyed to B. Talley Richardson the twenty-five acres in question, and B. Talley Richardson became the owner in fee of all of the land embraced within the boundaries of the timber deed. B. Talley Richardson retained title to the twenty-five acres until November 8, 1907, a little over

three years, when he conveyed the same back to T. Monroe Richardson. In 1908 the Atlantic Coast Lumber Corporation, claiming under the grant to Tilghman Lumber Company, which was still of force, entered upon the entire tract of land and cut the timber therefrom, including the twenty-five acres which originally belonged to T. Monroe Richardson, which T. Monroe Richardson had conveyed to his father, B. Talley Richardson, and which B. Talley Richardson had reconveyed to his son, T. Monroe Richardson. T. Monroe Richardson then sued for damages for the timber cut, and recovered a verdict for $750 actual damages and $150 punitive damages. The Atlantic Coast Lumber Corporation in due time appealed to this Court, and the cause now comes to this Court, on the exceptions set forth in the record."

To which should be added the statement, that the respondent, T. M. Richardson, went into possession of the fifteen acres of land under a deed from J. T. and Martha Dimery, dated the 3d of May, 1892, which was recorded on the 21st of July, 1892, and he has continued in actual possession thereof without interruption, except by the alleged trespass of the defendant, until the commencement of this action.

In the language of the appellant's attorneys, the ruling of his Honor, the presiding Judge, was as follows:

"Defendant claimed at the trial below, and still claims under this state of facts, that when B. Talley Richardson acquired the title to the land, on which his son's timber stood, under his general warranty, the title to the timber which stood on this land, immediately inured to the benefit of the grantees of the Tilghman Lumber Company, and became vested in them. His Honor ruled and charged that had B. Talley Richardson continued to hold title to the land, which originally belonged to his son, he would be estopped from denying the title of Tilghman Lumber Company's grantees, but that his son would not be estopped

17—93

from denying such title, unless the son had *actual* notice of the claim of the grantee of Tilghman Lumber Company; and, further, that the fact that the deed of Tilghman Lumber Company and its grantees being recorded, was no notice with which the son was chargeable."

We shall discuss this question at some length, as it is, perhaps, one of the most important, affecting the title to real estate.

The principle is settled beyond controversy in this State, that if a grantor conveys land, with the usual covenants of warranty, to which at that time he has no title, but afterwards acquires a title, he is estopped from claiming that he did not have title, at the time of the sale, and the after acquired title inures, to the benefit of his grantee. *Reeder Ads. Craig,* 3 McC. 411; *Robertson* v. *Sharpton,* 17 S. C. 592; *Gaffney* v. *Peeler,* 21 S. C. 55.

But the question now under consideration, has not heretofore been judicially determined in this State.

The principle is thus stated in Pom. Eq. Jur., volume II, section 658: "If the records show a good title vested in the vendor at a certain date, and nothing done by him after that time to impair or encumber the title, it would seem, that the policy of the registry acts is thereby accomplished; the purchaser is protected; he is not bound to inquire further back, and to ascertain whether the vendor has done acts which may impair his title, prior to the time at which it was vested in him, as indicated by the records. This view is supported by many decisions—it seems by the weight of authority—which held that a purchaser, need not prosecute a search for deeds or mortgages, made by his own vendor, further back than the time at which the title is shown by the records, to have been vested in such vendor; or, in other words, a purchaser is not bound by the registry of deeds or mortgages from his vendor, made prior to that time."

When B. T. Richardson reconveyed the land to T. M. Richardson on the 8th of November, 1907, there was noth-

ing upon the record indicating, that B. T. Richardson had ever acquired any other title, than that derived from T. M. Richardson, on the 22d of October, 1904.

Section 214 of Wade on Notice is as follows: "The purchaser is not charged with notice from the record of conveyances from his grantor, prior to such grantor's acquisition of title. In such cases, the subsequent purchaser would not be estopped, by the record of a mortgage from his grantor, prior to the date of his grantor's deed. To hold otherwise would be to impose on the purchaser, the duty of examining the records indefinitely." And in section 216 the same author says: "Upon both principle and authority, it seems more consonant with the recording acts, to absolve purchasers from the duty of examining the records for conveyances from their grantors, prior to the time when they had a title to convey."

In *Wheeler* v. *Young*, 55 Atl. Rep. (Conn.) 670, the rule is thus stated: "To carry this doctrine to the extent, of giving priority to the title of one who, from his negligent failure to examine the records, has been induced to purchase land of a person having no title, over that of one who, without negligence, in good faith, and for value, and without knowledge of such prior deed, has purchased after his grant or has acquired title from one, having both the legal and record title, is opposed to the principles of equity and to the spirit of our registry laws. * * * The doctrine of estoppel is one which, when properly applied, 'concludes the truth in order to prevent fraud and falsehood, and imposes silence on a party only, when in conscience and honesty, he should not be allowed to speak.' *Van Rensselaer* v. *Kearney*, 11 How. 297."

In the case of *Deswell* v. *Buchanan's Executors*, 23 Am. Dec. (Va.) 280, the Court uses this language:

"The enrollment and registry acts of England and our recording acts, are expressly declared to be made for the benefit of subsequent purchasers; to protect them from secret

conveyances.    These acts, then, ought not to be turned to the injury of those, for whose benefit they were made, unless it be in obedience to some express provision contained in them.    But there is none such.    They declare that all deeds, etc., shall be void as to subsequent purchasers, unless duly recorded; but they nowhere declare, that such recording shall charge the subsequent purchasers with notice of the deed.    If not recorded the deed is void as to him; if recorded, it is only so far valid, that it passes to the bargainee, the title it purports to convey, provided the bargainor had that title; if he had it not, the deed cannot pass it though recorded, nor will the putting of it on record, affect the conscience of a subsequent purchaser of the legal title, with the equity which the deed raised between the bargainor and the bargainee.    The laws had no such intention, nor will their words bear such construction.    That this is settled doctrine in England, there are many cases to show."    (Citing numerous cases.)

The Court in the case of *Bingham* v. *Kirkland,* 34 N. J. Eq. 229, thus discusses the effect that would follow, if the record in such cases should be construed to give constructive notice: "It would involve a search against every person, whom the title in its transmission had ever touched, not merely for the period during which such person held the title, but for a period anterior thereto, during which any encumbrance might have been made and still exist.    Such a construction of the scope of constructive notice, imputed to a subsequent purchaser by our recording acts, is opposed to the sentiment of the bar of this State, as it has existed from the earliest period of their enactment.    The system of searching practiced, so far as I know or have been informed, without any deviation, has been to trace the line of record title, and search against each owner during the period that he held the title.    The titles to the real estate in this State, rest upon searches made in conformity to this view.    And it is a sensible view.    No one is supposed

to convey or encumber property, which he does not own. *Non dat qui non habet."*

In *Blake* v. *Graham,* 67 Am. Dec. (O.) 360, the rule is thus stated: "It is well settled, that the record or registry of a deed, is constructive notice only to those who claim through or under the grantor, by whom such deed was executed. * * * In the last named case (*Bates* v. *Norcross,* 14 Pick. 224), the Court says: 'To hold the proprietors of land to take notice of the records of deeds, to determine whether some stranger has without right, made conveyances of their lands, would be a most dangerous doctrine, and cannot be sustained with any color of reason or authority. * * * These rules rest upon the obvious reason, that a searcher can be fairly supposed to be made acquainted, with the contents of such deeds only as, in the process of tracing, link by link, his chain of title on the record, necessarily pass under his inspection.' "

Judge Hare, in a note to the Duchess of Kingston's Case, 2 Smith's Lead. Cas. 8th ed. 734, says: "It necessarily tends to give a vendee, who has been careless enough to buy what the vendor has not to sell, a preference over subsequent purchasers, who have expended their money in good faith, and without being guilty of negligence." He was, therefore, opposed to a doctrine that was so unjust.

In the case of *Ford* v. *Unity Church,* 23 L. R. A. (Me.) 563, to which there is a valuable and exhaustive note, the Court quotes with approval the following language from Mr. Rawle's excellent work on covenants for title, as follows: "This rule when applied to the case of a *bona fide* purchaser for value without notice, cannot harmonize with the spirit of our registry laws in force in this country, and leads to the position which certainly cannot be considered as tenable—that a purchaser must search the registry of deeds, not only from the time when his grantor acquired title, but also for a series of years before that time, in order to discover whether he had previously made any conveyance

(though without title), to any other person; for if he had, that person, according to this doctrine, holds the estate as against this person, and if the property has passed through several hands, a similar search must be made as to each." After making this quotation the Court uses this language: "He says nothing is more simple than what is termed, 'the line of title.' It is that the first purchaser should search the title for the deed to his vendor, and trace the title thence back to its source. If he finds no title in him, as would have been the case here, then it is his fault if he takes the deed. Now as to the second purchaser—one who buys after the vendor acquires a title. He searches until he finds the deed to his vendor, and traces the title back to its source. He finds it regular, and that since his vendor acquired the title he has not conveyed to any one else. He is not expected to look for conveyances from his vendor prior to the time the vendor acquired the title. 'Yet,' as Mr. Rawle says, 'according to the practical effect of the doctrine now being considered, and apart from counter equities, the purchaser who has brought himself, within all the provisions of the registry laws, is not protected at all, if his vendor had, before he had acquired title, conveyed to another with covenants, a title which was without existence or value."

The Court announced the rule just stated, although the following statute was then of force: "If any person shall convey any real estate by conveyance, purporting to convey the same in fee simple absolute, and shall not at the time of such conveyance, have the legal estate in such real estate, but shall afterwards acquire the same, the legal estate subsequently acquired, shall immediately pass to the grantee, and such conveyance shall be void, as if such legal estate had been in the grantor, at the time of the conveyance."

The reasons which gave rise to the rule in such cases, are:

1. That the grantee is estopped by his conduct, from relying upon the record as constructive notice to a subsequent purchaser for value without notice, because he is

guilty of an act of wrong, by failing to exercise due dili-
gence to ascertain, whether his grantor has a good title, and
thus by his negligence participates in casting a cloud, upon
the title of the owner.

2. A contrary doctrine, would not only entail much incon-
venience in searching the records; but would render titles to
land, to a great extent, uncertain—such a result being
against the spirit of the recording acts, as well as against
public policy.

The rule is especially applicable in the present case, for
the reason, that both the grantor and grantee, had at least
constructive notice of T. M. Richardson's title, not only
from the fact that he was in possession, but from his
recorded deed.

The exceptions raising this question are overruled.

All other questions presented by the exceptions, are either
dependent upon the conclusions hereinbefore announced, or
the appellant has failed to show, that there was prejudicial
error.

Judgment affirmed.

MR. JUSTICE WOODS, *disqualified.*

2 Petition for rehearing refused by formal order
December 2, 1912.