M. & J. USED CARS, INC. v. SAM EASTON

No. 6911DC360

(Filed 27 August 1969)

**1. Automobiles § 5; Sales § 1— memorandum — bill of sale**

Paper writing entitled "Here Is The Deal" describing an automobile by year, make, body type and serial number, and setting forth the cash sales price, down payment, and due date for the unpaid balance was at most only a memorandum and did not constitute a bill of sale.

**2. Trial § 58— waiver of jury trial — review of findings by trial court**

Where the parties waive jury trial and agree that the court find the facts, the court has the function of weighing the evidence, and its findings are conclusive on appeal if supported by any competent evidence, notwithstanding that evidence to the contrary may have been offered.

**3. Automobiles § 5— vesting of title**

The vesting of title to an automobile is deferred until the purchaser has the old certificate endorsed to him and makes application for a new certificate.

**4. Automobiles § 5— transfer of title — bill of sale**

Title to a motor vehicle cannot be transferred in this State by bill of sale.

**5. Automobiles § 5— transfer of title — written memorandum — findings by court**

In this action to recover possession of an automobile, the trial court erred in finding that defendant had acquired title to the automobile where all the evidence shows that, pursuant to a business arrangement which had existed for several years, the automobile was purchased by draft drawn on plaintiff corporation by a partner of another automobile company, that the automobile was sold and title was issued to the new owner, subject to a bank lien, with the profit on the sale being divided between plaintiff and the automobile partnership, that the new owner later requested the partner of the automobile company to sell the automobile for her, that the partner gave possession of the automobile to defendant upon receipt of $500 from defendant, either as a down payment on the purchase price or as a loan, that the partner gave defendant a paper writing entitled "Here Is The Deal" setting forth a description of the automobile, the purchase price, down payment of $500, and due date of the balance, and that title was thereafter transferred to plaintiff by the owner upon payment of a draft drawn upon plaintiff by the partner, the memorandum given by the partner to defendant being insufficient to convey title to defendant, and the evidence establishing that plaintiff has title to the automobile.

APPEAL by plaintiff from *Morgan, C.J.,* 25 March 1969 Session, JOHNSTON County District Court.

Plaintiff instituted this action 25 October 1968 to recover one

1962 Chevrolet Corvette automobile (Corvette). Simultaneously with the institution of the action, plaintiff instituted ancillary claim and delivery proceedings.

Defendant filed answer denying plaintiff's ownership of the Corvette and asserting his own title thereto. Defendant posted a bond and retained possession of the vehicle.

The case was tried without a jury, and the trial judge entered the following judgment:

"This matter coming on to be heard before the undersigned Judge of the District Court Division of the General Court of Justice for Johnston County, North Carolina, jury having been waived, and being heard before the undersigned, and the Court finds the following facts:

1.   That the plaintiff is a corporation organized and existing under the laws of the State of North Carolina with its main office in Johnston County, North Carolina; that the defendant, Sam Easton, is a citizen and resident of Wayne County, North Carolina.

2.   That this is an action to determine ownership and the right of possession to a 1962 Chevrolet Corvette, Serial No. 20867S107598; that the defendant now has possession of said automobile, he having caused a bond to be filed in this matter to retain possession of said vehicle.

3.   That L & T Motors is a partnership with its office in Johnston County, North Carolina, and one of the partners in that business is Tommy Pittman.

4.   That for approximately two years prior to the occasion complained of in the complaint, the partnership of L & T Motors and the plaintiff, M & J Used Cars, Inc., entered into an agreement whereby Tommy Pittman of L & T Motors, would buy automobiles, and would pay for said automobiles by executing a draft to the owner of same and would sign said draft, pursuant to an agreement with the plaintiff, as follows: 'M & J Used Cars, Inc., by Tommy Pittman'; that on some occasions the cars purchased in this manner by Tommy Pittman would be titled in the name of L & T Motors and sometimes the title was in the name of the plaintiff; that the cars were then washed, repaired, and otherwise gotten ready for sale and were either sold at retail or wholesale, and following the sale and the payment of the draft, the net profit realized from the sale of said automobile was split as follows: L & T Motors two-

thirds and the plaintiff one-third; that the plaintiff authorized Tommy Pittman to execute the name of the plaintiff on titles to motor vehicles, selling the interest of the plaintiff, in said automobiles, this authority being used primarily out of the state of North Carolina but on several occasions said practice was followed in the State of North Carolina.

5. That during the month of October, 1966, L & T Motors, acting by and through Tommy Pittman, bought the automobile which is the subject matter of this action from Cobb Motor Company in Goldsboro, North Carolina, and paid for it by issuing a draft for the purchase price against M & J Used Cars, Inc., the said Tommy Pittman signing said draft as follows: 'M & J Used Cars, Inc., by Tommy Pittman'; that said car was thereafter sold to Rendie Ferrell Barbee; that the bill of sale for the car was given to the purchaser on a bill of sale from the plaintiff, signed by its president, George McLamb. That the Department of Motor Vehicles in Raleigh, North Carolina, on November 2, 1966, issued its North Carolina certificate of title to Rendie Ferrell Barbee and showed a lien in favor of the First Citizen Bank & Trust Company, Smithfield, North Carolina; that upon receipt of the money for the automobile from the purchaser, the plaintiff and L & T Motors, divided the profit realized upon the sale of said automobile in accordance with the terms hereinabove set out; that approximately thirty days thereafter Rendie Ferrell Barbee brought the automobile back to Tommy Pittman and surrendered it to him; that on December 27, 1966, Tommy Pittman sold the 1962 Chevrolet Corvette automobile, Serial No. 20867S107598, to the defendant for $1,000.00 and signed the bill of sale as follows: 'L & T Motors, by Tommy Pittman'; that the defendant paid $500.00 down and agreed to pay the balance in the amount of $500.00 on January 7, 1967, that being the time that Tommy Pittman indicated that he could have the title to said vehicle, it at that time being retained by the First Citizens Bank & Trust Company, Smithfield, North Carolina, pursuant to the original sale to Rendie Ferrell Barbee.

6. That neither the plaintiff nor L & T Motors paid Rendie Ferrell Barbee for said automobile at the time that it was returned to Tommy Pittman, but the payments were kept up at the First Citizens Bank & Trust Company by Tommy Pittman; that on May 10, 1967, Tommy Pittman executed a draft in the amount of $1350.00 to Rendie Ferrell Barbee in payment for

said automobile and signed it, 'M & J Used Cars, Inc., by Tommy Pittman'; that Rendie Ferrell Barbee presented said draft to the First Citizens Bank & Trust Company on May 18, 1967, and said bank then caused the North Carolina certificate of title to be executed by her and showed the purchaser to be the plaintiff; that the plaintiff's bank in due course, pursuant to instructions from the plaintiff, honored said draft.

7. That the 1962 Chevrolet Corvette, described above, has remained continuously in the possession of the defendant since December 27, 1966, and no demands or questions concerning the right of possession was raised by the plaintiff until the filing of this suit and the plaintiff accompanied the Sheriff to the place of business of the defendant.

8. That the defendant is a registered dealer, authorized by the laws of this state, to buy and sell motor vehicles as a dealer in the same manner as is the plaintiff in this action.

9. That no North Carolina certificate of title has been delivered by Tommy Pittman, L & T Motors, or the plaintiff, to the defendant for the 1962 Chevrolette Corvette described in the pleadings. That numerous demands for a title have been made by the defendant upon Tommy Pittman.

10. That at the time the said Tommy Pittman executed the draft to Rendie Ferrell Barbee in the amount of $1350.00, and at the time that it was presented to the bank and approved by the plaintiff for payment, Tommy Pittman advised George McLamb, president and principal owner of the plaintiff corporation, that he had borrowed $500.00 on said automobile from the defendant and the plaintiff, acting by and through its agent, George McLamb, agreed to pay the sum of $500.00; that the defendant had agreed that he would surrender possession of said automobile upon the payment to him of $500.00.

11. That the plaintiff did not pay the $500.00 and the plaintiff and L & T Motors discontinued and terminated the relationship which existed between them and the plaintiff issued claim and delivery for the automobile described in the pleadings.

UPON THE FOREGOING FINDINGS OF FACT, THE COURT MAKES THE FOLLOWING CONCLUSIONS OF LAW:

1. That the court has jurisdiction of the parties and the subject matter.

2. That at the time of the sale of the 1962 Chevrolet Cor-

vette automobile, Serial No. 20867S107598, on December 27, 1966, by L & T Motors, the bill of sale having been executed as follows: 'L & T Motors, by Tommy Pittman', the said Tommy Pittman was at that time acting in accordance with and in furtherance with the agreement and arrangement then and there existing between L & T Motors and the plaintiff and was the agent of the plaintiff, and the defendant is the owner and entitled to possession of said automobile.

The court therefore answers the issues submitted to it as follows:

1. Is the plaintiff the owner and entitled to the possession of the 1962 Chevrolet Corvette, Serial No. 20867S107598, as alleged in the Complaint?

ANSWER:   No.

2. What was the value of the 1962 Chevrolet Corvette, Serial No. 20867S107598, on the 25th day of October, 1968, the date said vehicle was seized by the Sheriff of Wayne County?

ANSWER:   ...............

3. Is the defendant the owner and entitled to the possession of the 1962 Chevrolet Corvette, Serial No. 20867S107598, as alleged in the Answer?

ANSWER:   Yes.

IT IS, THEREFORE, ORDERED, ADJUDGED AND DECREED that the defendant is the owner and entitled to possession of the 1962 Chevrolet Corvette automobile, Serial No. 20867S107598.

It is further ordered, adjudged and decreed that the defendant and his bondsman be and they are hereby discharged.

It is further ordered, adjudged and decreed that since the defendant has never paid the balance of the purchase price for said automobile and having stipulated his willingness to pay the same upon the presentment of title properly executed, free of all liens, it is ordered that the plaintiff be paid the sum of $500.00 by the defendant upon the delivery to him of the North Carolina Certificate of Title to said vehicle, properly endorsed over to him, free and clear of all encumbrances.

It is further ordered, adjudged and decreed that upon the failure of the plaintiff to execute said title, the North Carolina Department of Motor Vehicles shall cause a duplicate Certificate of Title to be issued to the defendant for said automobile

and that the defendant then tender by certified check by. registered mail the sum of $500.00 to the plaintiff and should said tender of payment be rejected, that the law in such cases made and provided be invoked against the plaintiff.

It is ordered and directed that the costs of this action be taxed against the plaintiff.

This the 25th day of March, 1969.

s/ ROBERT B. MORGAN, SR.
Judge Presiding"

From this judgment the plaintiff appealed to this Court.

The facts are contained in the opinion.

L. Austin Stevens for plaintiff appellant.

Braswell, Strickland, Merritt & Rouse by Roland C. Braswell for defendant appellee.

CAMPBELL, J.

The plaintiff makes two assignments of error. The first to the effect that the "verdict and judgment is contrary to and unsupported by any of the evidence." The second is "such verdict and judgment is contrary to the applicable law."

M. & J. Used Cars, Inc., is a North Carolina corporation with its principal stockholder and president being George McLamb (McLamb).

L & T Motor Company (L & T) was a partnership with two partners, Tommy Pittman (Pittman) and Larry Hall.

Both plaintiff and L & T carried on their business operations in Johnston County, North Carolina.

The defendant lives in Goldsboro, Wayne County, North Carolina, and is engaged in a mobile home business and in connection with his business has a used car dealer's automobile license.

At the time involved in the transactions pertaining to the Corvette automobile in this case, L & T conducted the partnership business from property which it rented on a month-to-month basis from plaintiff.

Plaintiff, acting through McLamb, and L & T acting through Pittman, over a period of several years conducted business transactions wherein Pittman would locate an automobile, and in order

to purchase the automobile, Pittman would issue a draft drawn on plaintiff by him. The title to the automobile would be taken either in the name of L & T or in the name of plaintiff. The automobile would be conditioned by L & T and then sold by L & T. The proceeds from the sale would be applied first to repay plaintiff for the purchase price of the vehicle and then the profit would be divided with one-third going to plaintiff and two-thirds going to L & T. This course of conduct had been going on for several years.

In October 1966 Pittman purchased the Corvette from Cobb Motor Company in Goldsboro. The purchase of the Corvette was handled in the same manner as previous purchases, namely, Pittman issued a draft drawn on plaintiff for the purchase price, and the title was placed in the name of L & T.

Shortly after purchasing the Corvette, Pittman sold the Corvette to a Mrs. Barbee. Mrs. Barbee borrowed $1,603.25 on 29 October 1966 from First Citizens Bank, Smithfield, North Carolina, and used the Corvette as security for said loan. The purchase price received from Mrs. Barbee was divided between plaintiff and L & T as usual.

The Department of Motor Vehicles of the State of North Carolina issued a certificate of title for the Corvette to Mrs. Barbee dated 2 November 1966, and showed on the face of the certificate of title the first lien in the amount of $1,603.25 dated 29 October 1966 and lienholder to be First Citizens Bank, Smithfield, North Carolina.

In December 1966 the Corvette was owned by Mrs. Barbee subject to the first lien to First Citizens Bank, Smithfield, North Carolina. The bank had the certificate of title issued by the North Carolina Motor Vehicles Department, and neither plaintiff nor L & T had any interest whatsoever in said vehicle.

During the month of December 1966, Mrs. Barbee brought the Corvette to Pittman and requested him to sell the Corvette for her. Pittman took the Corvette to Goldsboro and in his words "pawned" it to the defendant for $500.00. This was done on 27 December 1966. In addition to getting $500.00 from the defendant, Pittman gave possession of the Corvette to the defendant and gave him a piece of paper reading in part:

"Here Is The Deal

CASH SALES PRICE — $1,000.00
TOTAL DOWN PAYMENT — $500.00
UNPAID CASH BALANCE — $500.00

Payable in one installment of $500.00
First Installment Becomes Due on January 7, 1967.

s/ L & T MOTORS
By: Tommy Pittman"

The Corvette was described in the paper writing by year, make, body type and serial number. The paper writing was a printed form, and in addition to the portions quoted above contained other printed matter and blank spaces unfilled.

[1]  At most the printed paper writing signed by Pittman and given to the defendant on 27 December 1966, represented only a memorandum and certainly did not constitute a bill of sale.

[2]  In this case trial by jury was waived and the parties agreed that the Court find the facts. "It is the rule in North Carolina that where the parties waive a jury trial and agree that the Court may find the facts, they thereby transfer to the Judge the function of weighing the evidence, and his findings are conclusive on appeal if supported by any competent evidence, notwithstanding the fact that evidence to the contrary may have been offered. . . ." *Huski-Bilt, Inc., v. Trust Co.*, 271 N.C. 662, 157 S.E. 2d 352.

The first four numbered findings of fact by the trial court are supported by some of the evidence in the case.

[5]  Finding of Fact No. 5 is supported by some of the evidence in the case except for that portion reading, ". . . that on December 27, 1966, Tommy Pittman sold the 1962 Chevrolet Corvette automobile, Serial No. 20867S107598, to the defendant for $1,000.00 and signed the bill of sale as follows: 'L & T Motors, by Tommy Pittman'. . . ."

The defendant introduced evidence, and Pittman testified as a witness for the defendant. Pittman testified that after the automobile had been sold to Mrs. Barbee and after she had acquired the certificate of title thereto issued by the Department of Motor Vehicles which she had left at the First Citizens Bank at Smithfield as security for the first lien on the automobile in the amount of $1,603.25, she returned the automobile to him and requested that he sell it for her. At that time the plaintiff knew nothing about the transaction between Mrs. Barbee and Pittman. The plaintiff had no interest

whatsoever in the automobile at that time. Pittman testified that he was acting as an agent for Mrs. Barbee in trying to sell her automobile.

While Pittman had the automobile trying to sell it for Mrs. Barbee, he needed $500.00, and he went to Goldsboro for the purpose of obtaining $500.00. He testified that in the transaction with the defendant in Goldsboro he was acting for himself and not for Mrs. Barbee and that he borrowed the $500.00 for himself. He testified, "I was borrowing $500.00 and pawning the car." At the time of obtaining the $500.00 from the defendant, Pittman gave defendant the paper writing above mentioned and titled "Here Is The Deal." Pittman described it as being, "[w]ell, I had to give the man something" when he was borrowing $500.00 on the automobile.

Pittman never repaid the $500.00 which he claimed to have borrowed from the defendant. Later in the month of May 1967, Pittman drew a draft on the plaintiff for $1,350.00 payable to Mrs. Barbee. This draft was dated May 10, 1967, and the plaintiff declined to recognize the draft and authorize its payment. A few days thereafter, Mrs. Barbee and Pittman met with McLamb, the President and principal stockholder of plaintiff, and McLamb authorized plaintiff's bank to accept the draft of $1,350.00 and pay it. This was done on 18 May 1967 and simultaneously with the payment of the draft, Mrs. Barbee executed the assignment of title transferring the title to the automobile to plaintiff, and First Citizens Bank released its first lien. Pittman testified that at this time he informed plaintiff that he owed the defendant $500.00 on the automobile and Pittman agreed to pay the $500.00 that he owed the defendant. Pittman further testified that he expected to get the $500.00 when he settled up with plaintiff. He testified, "we were to straighten up and settle up, and I should have had enough money coming to pay the $500.00, and that is what I agreed to do that day, but of yet, we have never settled up." Plaintiff never agreed to pay anything more.

The defendant testified in his own behalf that he had a license to deal in motor vehicles in North Carolina and has done so since 1960. That he had known Pittman since 1960; that he knew McLamb by sight, but had had "[n]o business transactions" with him. Pursuant to a telephone call, he went to the place of business of a Mr. Sasser who also was in the automobile business. On arriving there, he had a conversation with Pittman. He gave Pittman $500.00 in cash and accepted possession of the automobile and the paper writing "Here Is The Deal." Since that time he has had possession of the automobile. He testified that he did not know that plaintiff had

any interest in this particular automobile. He thought he was purchasing the automobile from Pittman and L & T Motors. He testified that he thought he was making a $500.00 down payment and that Pittman was supposed to get the title to the vehicle some time thereafter, and when he delivered the title to him, he would then pay the remaining $500.00. He testified that he kept after Pittman on several occasions about the title, and "[i]n numerous conversations, he always had some type of an excuse. . . . On another occasion, Tommy asked me what it would take to get the car back from me. This was after I had had the car for some time and could not get a title. I told Tommy that I wanted my money back, or I wanted the title. He asked me if I would give him the car back, if he paid me my $500.00 back. . . . On numerous occasions, I told him 'yes.'" He further testified that Pittman told him that he was the owner of the automobile, that is L & T Motors was the owner. Pittman did not mention Mrs. Barbee to the defendant, and the defendant never saw a title to the automobile.

**[3]** Since 1961 transfer of ownership of an automobile by an owner thereof is not effective until the statute has been complied with. "What the amendments of 1961 say is: The vesting of title is deferred until the purchaser has the old certificate endorsed to him and makes application for a new certificate." *Credit Co. v. Norwood,* 257 N.C. 87, 125 S.E. 2d 369.

**[4]** The defendant did not acquire title to the Corvette and the paper writing "Here Is The Deal" at most was merely a memorandum of what the parties, the defendant and Pittman, intended to do in the future. Even if that paper writing had been a valid bill of sale, it would not have conveyed title as title to a motor vehicle cannot be transferred in North Carolina by that method. *Bank v. Motor Co.,* 264 N.C. 568, 142 S.E. 2d 166. Pittman had no title to the Corvette and no right to deliver possession to the defendant. Defendant acquired no rights in the Corvette as Pittman had none to give.

**[5]** There was no evidence in the trial of this case to support the findings of fact made by the trial court that the defendant had acquired title to the Corvette.

There is no evidence to support the finding of fact that plaintiff ever agreed to pay anything to the defendant. The defendant never considered the plaintiff involved in the transaction between the defendant and Pittman with regard to this Corvette automobile. The defendant has no claim whatsoever against the plaintiff. The defendant dealt with and relied on Pittman whom he had known for years.

All of the evidence establishes the fact that the plaintiff is the owner and has title to the Corvette automobile.

The judgment of the District Court is reversed, and this cause is remanded for the entry of a judgment not inconsistent with this opinion.

Error and remanded.

BROCK and MORRIS, JJ., concur.